ROY G. EDWARDS AND DEBORAH S. EDWARDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edwards v. Commissioner
Docket No. 34900-87
United States Tax Court
T.C. Memo 1989-409; 1989 Tax Ct. Memo LEXIS 407; 57 T.C.M. (CCH) 1217; T.C.M. (RIA) 89409; 11 Employee Benefits Cas. (BNA) 1406; August 9, 1989
*407 Petitioner was an employee of HPNA, a professional corporation, from 1974 through 1984. On June 1, 1982, one of HPNA's two physician-shareholders purchased all of the stock owned by the other shareholder. The selling shareholder and another physician organized Piedmont, a separate professional corporation providing similar services. For approximately 1 year after Piedmont was organized, petitioner was employed by both Piedmont and HPNA, and performed services for each on approximately a half-time basis. Sometime prior to June 1, 1983, petitioner terminated her employment with Piedmont and resumed full-time employment with HPNA. Prior to July 1, 1983, petitioner was a participant in a pension plan and a profit-sharing plan maintained by HPNA, which were terminated on that date. Petitioner received lump-sum distributions in liquidation of her accounts in those plans on January 31, 1984. Held: petitioner's receipt of the lump-sum distributions was not on account of her separation from the service of HPNA, and petitioner is not entitled to use the 10-year forward-averaging provisions of section 402(e)(1). Matthew E. Bates, for the petitioners. Ross A. Rowley, for the respondent. *408 WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated August 3, 1987, respondent determined a deficiency in petitioners' 1984 Federal income tax in the amount of $ 7,171. The issue is whether lump-sum distributions from qualified pension and profit-sharing plans received by petitioner Deborah Edwards [1] are eligible for 10-year forward averaging pursuant to section 402(e)(1). [2] Petitioner also contends that respondent should be required to bear the burden of proving that petitioner is not entitled to the benefits of section 402(e)(1), arguing that the issue was not sufficiently raised in the statutory notice. FINDINGS OF FACT This case was submitted fully stipulated pursuant to Rule 122. The stipulation and attached exhibits are incorporated by this reference. At the time they filed *409 their petition, petitioners resided in High Point, North Carolina. From 1974 through the end of 1984, petitioner was employed as a surgical technician by High Point Neurosurgical Associates, Inc. (HPNA). Prior to June 1, 1982, HPNA employed three physicians and nine other employees. The physician employees were Dr. James A. Johnson (Dr. Johnson), Dr. Michael B. Hussey (Dr. Hussey), and Dr. Russell L. Blaylock (Dr. Blaylock). Drs. Johnson and Hussey each owned 50 percent of the stock of HPNA. On that date, Dr. Johnson acquired Dr. Hussey's 50-percent interest and retained 100 percent of the stock of HPNA through the end of 1984. After he sold his HPNA stock to Dr. Johnson, Dr. Hussey formed Piedmont Neurosurgical Associates, Inc. (Piedmont) with Dr. Blaylock, both of whom became full-time employees of that entity. Of the nine nonphysician employees of HPNA, seven became employed by Piedmont. Dr. Johnson, petitioner, and one other nonphysician employee were the only persons employed by HPNA immediately after June 1, 1982, although two additional persons were later hired in nonphysician capacities. For a period of no more than 1 year following June 1, 1982, petitioner was employed *410 by HPNA on a part-time basis only. During that period, petitioner was also employed on a part-time basis by Piedmont. Each of these part-time employments was on approximately a half-time basis. Sometime prior to June 1, 1983, petitioner terminated her employment with Piedmont and was employed by HPNA on a full-time basis through the end of 1984. The types of medical services provided by HPNA and the duties performed by its employees were the same after June 1, 1982, as before. The employees who left HPNA and began work with Piedmont performed the same services and had the same duties with Piedmont as with HPNA. On June 1, 1982, HPNA maintained a pension plan and a profit-sharing plan for the benefit of its employees. These plans had been adopted on October 1, 1971, and constituted plans described in section 401(a), which were exempt from tax under section 501(a). HPNA made no contributions to either plan after the plan years ended on September 30, 1982. The board of directors of HPNA originally resolved on September 27, 1982, to terminate both plans as of October 1, 1982. Their termination was, however, delayed, and by a second resolution of the board of directors on June *411 15, 1983, HPNA terminated the plans effective July 1, 1983. Petitioner had been a participant in both the pension and the profit-sharing plans since first becoming eligible to participate in 1974. As a result of the plans' termination, petitioner received on January 31, 1984, distribution payments of $ 4,891.27 and $ 26,475.88 as the balances to her credit with respect to the pension plan and profit-sharing plan, respectively. Petitioner had never made any employee contributions to either plan. On her 1984 Federal income tax return, petitioner elected to utilize the 10-year forward-averaging provisions of section 402(e)(1), and filed with her return Form 4972 making such election. During the examination of petitioner's return, a handwritten statement on a Form 886-A "Explanation of Items" was directed to petitioner and states as follows: This reply is in response to your correspondence dated January 12, 1987. We apologize for the delay in handling your case. The amount of unreported income and the identity of the payor of that income is Amount
Payor
Pension
$ 31,367
High Point Neurosurgical
The statement of changes attached to the statutory notice stated that "The pension you received *412 is includible in income." Neither petitioner nor her husband received any other payments or distributions attributable to a pension or profit-sharing plan during 1984. OPINION Burden of Proof
The first issue is whether the burden of proof with respect to petitioner's entitlement to utilize the 10-year forward-averaging provisions of section 402(e)(1) is on respondent. Petitioner argues that respondent's notice of deficiency merely proposed an increase to her taxable income, and that the basis for that increase was not made known to her until respondent filed his answer. Ordinarily, petitioner has the burden of proof pursuant to Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). However, in the case of any "new matter," Rule 142(a) places such burden to respondent. We do not agree with petitioner's statement on brief that "The evidence required to refute respondent's second determination is obviously far different than the evidence required to merely show that certain income had been reported." The explanation of adjustments attached to the notice of deficiency specifically states that "the pension you received is includible in income." Petitioner has not shown or even alleged *413 that either she or her husband received any pension distributions other than those petitioner received from HPNA; hence, there is no way other than denial of 10-year forward averaging that respondent could increase petitioner's pension income. Petitioner does not allege that she has been prejudiced or surprised in any way by the allegations contained in respondent's answer. The correspondence which petitioner received during the examination stage, and which she attached to her petition, shows that petitioner was on notice of the source of the increase in income determined by respondent even before the statutory notice was issued. See Peraino v. Commissioner, T.C. Memo. 1982-524. We therefore find that petitioner has the burden of proof. 10-Year Forward Averaging
Section 402(e)(1) allows 10-year forward averaging on certain lump-sum distributions from a trust which forms part of a qualified retirement plan. This method of computation is found in section 402(e)(1)(B), and is designed to reduce the tax impact of the receipt in 1 year of a distribution which is the product of several years of employer contributions and earnings thereon. See S. Young, Pension and Profit Sharing Plans, *414 section 21.03(3) (1988). In order to qualify as a lump-sum distribution which is eligible for the preferential treatment of section 402(e)(1), the distribution must be triggered by one of the four events set forth in section 402(e)(4)(A). The burden of proving that she is entitled to utilize 10-year forward averaging is on petitioner. Ridenour v. United States, 3 Cl. Ct. 128 (1983); United States v. Martin, 337 F.2d 171 (8th Cir. 1964). The sole substantive issue in this case is whether petitioner received her distribution on account of her separation from the service of HPNA. Sec. 402(e)(4)(A)(iii). The term "separation from the service" is not defined by either the Code or regulations. In Reinhardt v. Commissioner, 85 T.C. 511 (1985), we examined the legislative and judicial history of that phrase, noting that it had been consistently interpreted in this Court as a severance of an employee's connections with his employer. Reinhardt v. Commissioner, supra at 519, and cases cited therein. However, petitioner argues that "Several Courts have held that an employee was separated from service due to changes in the organization of the employer corporation for which that person had *415 been employed." Petitioner submits that such is the situation here, pointing to changes in her employment after the business split-up of June 1, 1982. In support of her position, petitioner relies primarily on Judkins v. Commissioner, 31 T.C. 1022 (1959); Martin v. Commissioner, 26 T.C. 100 (1956); and Miller v. Commissioner, 22 T.C. 293 (1954), affd. per curiam 226 F.2d 618 (6th Cir. 1955). In Miller v. Commissioner, supra, the taxpayer's employer, the Strouss-Hirshberg Co. (Strouss-Hirshberg) exchanged all its assets for stock of the May Department Stores Co. (May), whereupon Strouss-Hirshberg distributed to its shareholders the stock received in complete liquidation. The taxpayer received a lump-sum distribution upon termination of Strouss-Hirshberg's plan incident to the exchange, while continuing in the same employment with May. As the taxpayer became the employee of May and was not thereafter employed by Strouss-Hirshberg, we had "no difficulty in finding that [the taxpayer] had severed connections with [her] former employer and that there had been a 'separation from the service' of that employer." Miller v. Commissioner, supra at 301. In Martin v. Commissioner, supra, the *416 taxpayer was an employee of Dillinger Manufacturing Co. (Dillinger), all of whose stock was acquired in 1948 by Sperry Corp. (Sperry). On April 1, 1949, Dillinger was liquidated and its assets transferred to Sperry, whereupon the taxpayer became an employee of Sperry. Shortly after the stock acquisition and liquidation, Dillinger's retirement plan was terminated, and the taxpayer received a lump-sum distribution in liquidation. On the authority of Miller, we held that the taxpayer had separated from the service of Dillinger. In Martin, respondent specifically argued "that the term 'service' in the statute should be construed to mean separation from the business or enterprise in which the employees were engaged when they became participants of a pension plan" and that since the taxpayer had not separated from his employment, there was no separation from the service. Martin v. Commissioner, supra at 106. We rejected respondent's argument, holding that rather than a separation from the business or enterprise, the phrase "on account of the employee's separation from the service" meant "his separation from the service of his employer." Martin v. Commissioner, supra at 106, citing Miller v. Commissioner, supra, *417 and Glinske v. Commissioner, 17 T.C. 562 (1951). In Judkins v. Commissioner, supra, the taxpayer was employed by the Waterman Steamship Co. (Waterman), 99 percent of whose stock was purchased by the C. Lee Co. For unknown reasons, the taxpayer's employment was terminated approximately 1 month after this acquisition. Two months later, and after Waterman received approval to terminate the plan from the Internal Revenue Service, petitioner received a lump-sum distribution in liquidation of his retirement plan account. Once again we rejected the argument raised by respondent in Miller and Martin, this time on the grounds that the taxpayer's employment was terminated prior to the termination of his employer's retirement plan. We found it significant that both the taxpayer's employment and the employer's retirement plan were terminated prior to the time petitioner received any distributions from the plan. We held that the mere fact that the distribution was made shortly after the plan's termination was not determinative of whether or not the distribution was on account of that termination, rather than on account of the taxpayers' separation from the service. We think petitioner's reliance *418 on these cases is misplaced. In Judkins, there was a "separation from the service" in the most usual sense of the term; the taxpayer's employment was terminated, which is not the case here. Rather, petitioner was employed by HPNA from 1974 through at least the end of 1984, well past the dates of the plans' termination and the receipt of her distributions. Martin and Miller are also distinguishable. In Martin v. Commissioner, 26 T.C. 100, 106 (1956), we stated that an employee's separation from the service meant "his separation from the service of his employer." In Miller v. Commissioner, 22 T.C. 293, 301 (1954), we cited as controlling Glinske v. Commissioner, 17 T.C. 562, 565 (1951), where we interpreted the crucial phrase to mean "separation from the service of his employer [emphasis in the original]." In these cases, it may be more accurate to say that the employer's service was separated from the taxpayers, since the entities involved ceased to exist shortly after the transactions which precipitated the distributions. This caused the relationship between the employee and the particular employer to be severed. By contrast, petitioner remained an employee of HPNA, which remained *419 in existence after Dr. Johnson's June 1, 1982, purchase of Dr. Hussey's 50-percent interest and after the lump-sum distribution to petitioner on January 31, 1984. While there were many changes with respect to petitioner's employer, e.g., a change in ownership from two 50-percent shareholders to one 100-percent shareholder, and an apparent decrease in size, petitioner remained an employee of HPNA at all relevant times. Not every change in an employment relationship gives rise to a separation from the service of the employee. Such a separation will not be found unless there is a "change in the employment relationship in more than a formal or technical sense." Reinhardt v. Commissioner, 85 T.C. 511, 520 (1985); Gittens v. Commissioner, 49 T.C. 419, 424 (1968). Petitioner argues that the section 402(e)(4)(A)(iii) requirement of a separation from the service of the employer does not require a complete separation. Petitioner further argues that her position is supported by Martin, Miller, Judkins, and Smith v. United States, 460 F.2d 1005 (6th Cir. 1972). However, petitioner has cited no authority which explicitly supports the proposition that anything less than a complete separation *420 or severance from the employer satisfies section 402(e)(4)(A)(iii). We do not share petitioner's view of the statute on the cited cases. If Congress had intended "separation from the service" to mean something less than complete separation, it would have said so. The plain language of the statute leaves no room for a finding or conclusion that the reduction in petitioner's work schedule from full-time to part-time constitutes a separation from the service. In consideration of the foregoing, Decision will be entered for the respondent. Footnotes
1. Roy G. Edwards is a petitioner solely because he filed a joint return with his wife; all further references to petitioner are to Deborah S. Edwards. ↩
2. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩