Roy G. EDWARDS and Deborah S. Edwards, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 89–2833.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1990.

Decided June 27, 1990.

Mathew E. Bates (argued), Greensboro, N.C., for petitioners-appellants.

Deborah A. Swann (argued), Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Teresa E. McLaughlin (on brief), Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before HALL and WILKINSON, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

DUPREE, Senior District Judge:

In this appeal from the United States Tax Court the taxpayer, Deborah Edwards, challenges the court's ruling that she was not eligible for ten-year forward averaging pursuant to Internal Revenue Code of 1954, Section 402(e)(1), with respect to the lump sum distribution to her of the proceeds of certain pension and profit-sharing plans when they were terminated by her employer. Finding no error in the ruling, we affirm.

## I.

From 1974 to 1984, Edwards was employed as a surgical technician by High Point Neurological Associates, Inc. (HPNA). Prior to June 1, 1982, the clinic was owned jointly by two physicians, Drs. James A. Johnson and Michael B. Hussey. On June 1, 1982, Johnson purchased Hussey's interest in HPNA. Hussey formed a new clinic, Piedmont Neurosurgical Associates, Inc. (Piedmont) with another former HPNA physician. Seven of nine non-physician former employees of HPNA left that organization and began working for Piedmont. For approximately a year, Edwards worked part-time for HPNA and part-time for Piedmont. By June 1, 1983, however, Edwards had resumed working full-time for HPNA.

Effective July 1, 1983, HPNA terminated pension and profit-sharing plans covering Edwards and as a result, on January 31, 1984, she received a distribution from the plans totaling $31,367.15. On the 1984 joint tax return filed with her husband, Edwards elected to use the ten-year forward averaging mechanism allowed by I.R.C. § 402(e)(1) (1988) in reporting the distribution. The Commissioner of Internal Revenue (Commissioner) disagreed with this treatment and, in 1987, notified Edwards that her taxable income was being increased by $31,367, resulting in a tax deficiency of $7,171. Edwards then filed a petition with the Tax Court seeking a review of the Commissioner's decision. The Tax Court agreed with the Commissioner's position, and on Edwards' appeal to this court she contends that the Tax Court wrongfully placed on her the burden of proof and that it further erred in deciding that she was not entitled to income averaging under the statute.

## II.

Edwards first argues that the Tax Court erred in placing the burden of proof on her to demonstrate that she was entitled to the benefit of the statute. It is true that Tax Court Rule 142(a) (26 U.S.C. foll. § 7453) requires the burden of proof to shift to the Commissioner with respect to any new matter not presented in the statutory notice of deficiency. However, assuming the rule was otherwise applicable, Edwards fails to show how the Tax Court's failure to apply the rule could have possibly produced a different result in the case. The action was tried on fully stipulated facts, and the only legal question was whether the Code's income averaging provisions applied.

## III.

As to the remaining legal question, in general, distributions from qualified retirement plans are taxable as ordinary income in the year of distribution. I.R.C. § 402(a)(1). However, a "lump sum distribution" is eligible for ten-year forward averaging to reduce the tax impact of the distribution. In order to qualify as a "lump sum distribution," the payment must meet certain requirements not at issue here and also be attributable to one of the four triggering events found in I.R.C.

§ 402(e)(4)(A). In the instant case, the event at issue concerns whether the distribution was on account of "the employee's separation from the service" of her employer. I.R.C. § 402(e)(4)(A)(iii).

■ Giving the words their plain meaning, it appears that Edwards was not separated from the service of her employer. She continued working for HPNA after the change in ownership in June 1982, after the termination of the plans in July 1983 and after the distribution in January 1984. However, she argues that the change in ownership effectively constituted a "separation from the service" of her employer since there was a substantial decrease in the number of employees working at HPNA as well as other changes after the transfer of ownership.

As support, Edwards cites *Smith v. United States*, 460 F.2d 1005 (6th Cir.1972), where the court found a separation from service when a company purchased the stock of another business and then terminated the profit-sharing plan of the predecessor company, even though the predecessor continued business as a wholly-owned subsidiary of the purchasing company for three years following the distribution of the plan's proceeds. In arriving at this conclusion, the court emphasized that the predecessor's assets were liquidated and gave substantial effect to the fact that the decision to liquidate was made contemporaneously with the decision to terminate the plan. *Id.* at 1014.

Edwards also relies on *Greenwald v. Commissioner*, 366 F.2d 538 (2d Cir.1966), where a hosiery mill sold all of its assets, changed its name, and discharged fifty-nine of the sixty employees participating in a profit-sharing trust. The fifty-nine participants received a distribution from the trust in 1954. The corporation continued in business as an investment company with the taxpayer principal officer remaining as the lone participant in the trust. When the trust terminated and the assets were transferred to the taxpayer some five years later, the Commissioner sought to treat the entire distribution as ordinary income since the trust was no longer a qualified trust

under I.R.C. § 401(a)(4) following the 1954 distribution. While agreeing that the trust was no longer qualified after that time, the court went on to state that if the distribution to the taxpayer had taken place in 1954, it would apparently have been entitled to favorable tax treatment on account of the taxpayer's separation from service at that time. The court found that it would be harsh to treat the taxpayer differently from the other fifty-nine departing employees merely because he stayed on with the same employer after the radical transformation of its business. *Id.* at 541.

Edwards' reliance on these cases is misplaced. Unlike *Smith*, in this case there was not a liquidation of the assets of HPNA accompanying the decision to terminate the plans. Nor was there a mass severance of employees resulting from a sale of assets and a radical transformation of the business as occurred in *Greenwald*. While there was a change in ownership and decrease in the number of employees, HPNA continued in business, functioning as a neurological clinic. Edwards continued her employment with HPNA following the change in ownership and the later distribution under the plans. Under these facts, a change in ownership simply does not constitute a separation from service of the employer. *See United States v. Johnson*, 331 F.2d 943 (5th Cir.1964).

■ Moreover, even if we were to find a separation from service, Edwards would have to demonstrate the distribution was *on account of the separation*. The minutes of the Board of Directors' meeting in which it was resolved to terminate the plans indicate that the decision to end the plans was made because the costs were disproportionate to the number of participants and because the present participants had stated they were not interested in anything but "current" income. This raises a serious question as to whether the plans were even terminated on account of the change in ownership. In any event, to the extent that Edwards complains that she had no choice but to receive the distribution, it is apparent that she could have "rolled over" the funds into another quali-

fied plan, thereby avoiding adverse tax consequences. *See* I.R.C. § 402(a)(5)(A) and (a)(5)(E)(iv).

The judgment of the Tax Court is AFFIRMED.