FRANCIS C. BURTON, JR., AND HELEN H. BURTON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12970–90, 12971–90.    Filed December 17, 1992.

*Marquis E. Whittington,* for petitioners.
*Ansley N. Acree,* for respondent.

HAMBLEN, *Chief Judge:* Respondent determined deficiencies in petitioners' 1985 and 1986 Federal income tax in the respective amounts of $74,904.30 and $40,585.81. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years at issue, and

Rule references are to the Tax Court Rules of Practice and Procedure.

The sole issue for decision is whether petitioners properly reported distributions from qualified profit-sharing and pension plans under the 10-year forward averaging method provided by section 402(e)(1).[1] Resolution of this issue depends on whether petitioner Francis C. Burton, Jr.'s (Dr. Burton) change of status from that of an employee of a professional association of which he was the sole shareholder to that of a sole proprietor was a "separation from the service" within the meaning of section 402(e)(4)(A)(iii).

## FINDINGS OF FACT

These cases were submitted fully stipulated pursuant to Rule 122. The stipulation and attached exhibits are incorporated by this reference.

Petitioners resided in San Antonio, Texas, at the time they filed their petitions in these cases. Petitioners are married residents of the State of Texas. Petitioners timely filed, with extensions, their 1985 and 1986 joint Federal income tax returns.

### Medical Practice

During the years at issue, Dr. Burton was a practicing physician specializing in plastic surgery. On October 1, 1977, Dr. Burton incorporated his surgical practice, Francis Christian Burton, Jr., M.D., P.A. (P.A.), under the Texas Professional Association Act. Dr. Burton was the sole shareholder of the P.A.

Dr. Burton liquidated the P.A. on or about October 30, 1984. All assets remaining in the P.A. on the date of liquidation were distributed to Dr. Burton in accordance with section 337. Immediately after the liquidation, Dr. Burton resumed his surgical practice in the form of a sole proprietorship. At least one employee of the P.A., K. Riojas, remained in Dr. Burton's employment after the P.A. was liquidated.

---

[1] Respondent contended in her opening brief that petitioners were liable for the 10-percent penalty under sec. 72(m)(5)(A). In her reply brief, respondent conceded that sec. 72(m)(5)(A) did not apply to the distributions at issue in these cases.

From July 1982 through December 1986, the P.A. and Dr. Burton's sole proprietorship were located at 8601 Village Drive, Suite 224, San Antonio, Texas.

*Pension and Profit-Sharing Plans*

On July 1, 1978, the P.A. established the Francis Christian Burton, Jr., M.D., P.A. Pension Plan and Trust (pension plan) and the Francis Christian Burton, Jr., M.D., P.A. Profit-Sharing Plan and Trust (profit-sharing plan). The pension plan and profit-sharing plan were qualified employee retirement plans under section 401(a).

During the time in which Dr. Burton operated the P.A., deductible contributions allowable under section 404(a) were made to the plans and disclosed on the P.A.'s corporate tax returns. The plans had a fiscal year ending June 30. The last contribution to the pension plan was made on June 30, 1984. The last contribution to the profit-sharing plan was made on June 30, 1982.

The number of employees participating in the pension plan and the profit-sharing plan during the relevant time period fluctuated from four employees participating in the plans on July 1, 1983, to three employees participating in the plans on July 1, 1984. As of July 1, 1985, there were two employees, Dr. Burton and K. Riojas, who were eligible to receive distributions from the plans.

The pension plan and the profit-sharing plan were terminated on July 1, 1984. Soon after, petitioners filed a Form 5310, an application for a determination regarding a plan termination, with the Internal Revenue Service (IRS). In two letters dated June 17, 1985, and June 26, 1985, the IRS determined that the termination of the pension plan and the profit-sharing plan would not adversely affect their qualification for Federal income tax purposes.

The pension plan's assets were distributed to plan participants during 1985. The profit-sharing plan's assets were distributed to plan participants during 1986. Dr. Burton had neither attained the age of 59½ nor was he disabled on the dates of distributions.

In December 1985, Dr. Burton received a $177,525.73 distribution from the pension plan. Petitioners reported the distribution on their 1985 Federal income tax return on Form

4972 using the 10-year forward averaging method. Petitioners could have rolled the distribution from the pension plan over into another qualified plan, but chose not to.

In January 1986, Dr. Burton received a $129,470.93 distribution from the profit-sharing plan. Petitioners reported the distribution on their 1986 Federal income tax return on Form 4972 using the 10-year forward averaging method. Petitioners could have rolled the distribution from the profit-sharing plan over into another qualified plan, but chose not to.

## OPINION

Petitioners contend that in determining whether Dr. Burton separated from the service of the P.A. the issue before this Court is whether there was a beneficial change in the ownership of Dr. Burton's surgical practice as a result of the liquidation. Petitioners contend that, under the Texas Professional Association Act, the P.A. was Dr. Burton's separate property before the liquidation and that after the liquidation the liquidating distributions became the property of both petitioners. Petitioners further argue that, as a result of the liquidation and commingling, a beneficial change in the ownership occurred and, therefore, a separation from the service occurred qualifying petitioners for lump-sum distribution treatment.

Respondent contends that Dr. Burton's change of status from that of sole shareholder-employee to sole proprietor was merely a change in form and therefore does not constitute separation from the service within the meaning of section 402(e).

In general, distributions from qualified retirement plans are taxable as ordinary income in the year of distribution. Secs. 72, 402(a)(1). Since 1942, lump-sum distributions have been accorded preferential tax treatment. Revenue Act of 1942, ch. 619, tit. I, sec. 162(a), 56 Stat. 798, 862 (long-term capital gain treatment if the distribution was made on account of the employee's separation from the service). For the years at issue, recipients of lump-sum distributions are permitted to use the 10-year forward averaging method for reporting the ordinary income portion of the distribution. Sec. 402(e)(1); *Reinhardt v. Commissioner,* 85 T.C. 511, 517

(1985). The effect of 10-year forward averaging is to tax the distribution as if it had been received in equal annual installments over a 10-year period, rather than as having been received entirely in 1 year. This results in reducing the tax impact on the recipient in the year of distribution.

The term "lump-sum distribution", as defined in section 402(e)(4)(A), includes a distribution from a qualified trust within 1 year of the recipient which becomes payable to the recipient on account of the employee's separation from the service. The parties concede that the only issue to be decided in these cases is whether the distributions petitioners received in 1985 and 1986 were made "on account of" Dr. Burton's "separation from the service".

The phrase "separation from the service" is not defined in the Code or regulations. Consequently, courts have looked to the language of the statute and its legislative history in construing the phrase. *United States v. Johnson,* 331 F.2d 943, 947-949 (5th Cir. 1964); *Reinhardt v. Commissioner, supra* at 518-519. See generally *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 542-545 (1940). Relying on the legislative history of section 402, "this Court has consistently interpreted 'separation from the service' to mean when an employee severs his connection with his employer." *Reinhardt v. Commissioner, supra* at 519 (fn. ref. omitted).

On its face, the liquidation of Dr. Burton's P.A. and the continuation of his medical practice in the sole proprietorship form satisfies the formality of separation from the service expressed in section 402(e)(4)(A)(iii). The P.A. was the employer and ceased to exist after the liquidation; therefore, technically, Dr. Burton was separated from the service of his employer. While we have never considered this exact factual situation, "we have consistently followed as a general guideline that separation from the service 'requires a change in the employment relationship in more than a formal or technical sense.'" *Reinhardt v. Commissioner, supra* at 520 (citing *Gittens v. Commissioner,* 49 T.C. 419, 424 (1968)). We conclude that the liquidation of Dr. Burton's P.A. resulted in only a formal or technical change in the employment relationship. Consequently, the distributions which petitioners received in 1985 and 1986 do not qualify as lump-sum dis-

tributions and petitioners erroneously reported the amounts using the 10-year forward averaging method.

Generally, there are two lines of cases which address whether a taxpayer-employee is separated from the service of his employer within the meaning of section 402(e)(4)(A)(iii). In the first line, the courts addressed whether a change in the employment status of a taxpayer constituted a separation from the service. See *Reinhardt v. Commissioner, supra* (change from shareholder-employee to independent contractor does not constitute separation from the service); *Bolden v. Commissioner,* 39 T.C. 829 (1963) (owner-employee who sold his business was not separated from the service because he contracted with the new owner to continue to advise the business); *Ridenour v. United States,* 3 Cl. Ct. 128 (1983) (change from employee to partner does not constitute separation from the service); cf. *Devinaspre v. Commissioner,* T.C. Memo. 1985-435 (employee transfer between unrelated entities constituted separation from the service).

A second line of cases involves the issue of whether a person has separated from the service when the employer-corporation undergoes a change of ownership, reorganizes, merges, or liquidates and the taxpayer-employee continues to perform services for the surviving entity. See *United States v. Johnson, supra; Edwards v. Commissioner,* 906 F.2d 114 (4th Cir. 1990), affg. T.C. Memo. 1989-409; *United States v. Haggart,* 410 F.2d 449 (8th Cir. 1969); *Gegax v. Commissioner,* 73 T.C. 329 (1979); *Clarke v. Commissioner,* 54 T.C. 1679 (1970); *Gittens v. Commissioner,* 49 T.C. 419 (1968); cf. *Smith v. United States,* 460 F.2d 1005 (6th Cir. 1972).

In *United States v. Johnson, supra,* Lee Co. purchased over 99 percent of the outstanding stock of Waterman Steamship Co. On the day of acquisition, the newly elected board of directors of Waterman Steamship Co. voted to terminate the existing pension plan. The taxpayer was an employee of Waterman Steamship Co. who held the same job both before and after the sale of the stock. He received a lump-sum payment from the plan. Four months later, Lee Co. merged into Waterman Steamship Co. The court held that the payment to the taxpayer was not made on account of a separation from the service even though the ownership of the employer changed. The court, after reviewing the legislative history of section 402(e), stated:

after 1954 a separation from service would occur only on the employee's death, retirement, resignation, or discharge; not when he continues on the same job for a different employer as a result of a liquidation, merger or consolidation of his former employer. * * * [*Id.* at 949.]

Subsequently, in *Gittens v. Commissioner, supra,* a taxpayer received a distribution from a profit-sharing plan incident to a corporate reorganization in which the assets and liabilities of one corporation were transferred to another in exchange for stock and the transferor corporation was liquidated. The profit-sharing plan was adopted by the transferee corporation. The latter corporation carried on the business of the transferor corporation under the same name but in a different State of incorporation. The taxpayer was employed in the same capacity by both corporations, and there was no substantial change in the makeup of employees. We reasoned that, although the original employer underwent liquidation and there was a new owner and a new employer, the taxpayer's change in employment was one of form only and did not constitute a separation from the service. *Id.* at 425. In reaching this conclusion, "we place[d] great weight on the congressional intent to ignore reorganizations not involving a 'substantial change in the make-up of employees.'" *Id.*

Similar reasoning has also been applied by the IRS where there is a liquidation followed by a change in business form with no true change in ownership. Rev. Rul. 80-129, 1980-1 C.B. 86; see also Rev. Rul. 79-336, 1979-2 C.B. 187. For example, in Revenue Ruling 80-129, the Commissioner ruled that, where a corporation which was wholly owned by two shareholder-employees was liquidated and a successor partnership was formed by the former shareholder-employees to continue the business, there was no separation from the service. In reaching this conclusion the Commissioner relied on the reasoning of Revenue Ruling 79-336, *supra,* which stated that in the context of a reorganization an employee is separated from the service of the employer only upon death, retirement, resignation, or discharge, and not when the employee continues the same job for a different employer as a result of liquidation, merger, consolidation, etc., of the former employer. The Commissioner concluded:

The rationale of Rev. Rul. 79-336 is equally applicable to situations in which, for whatever purpose, an employer terminates its business and a

successor employer is formed to continue the business. That the successor employer operates its business under a form different from that of the predecessor employer does not require a different result. [Rev. Rul. 80-129, 1980-1 C.B. at 87.]

Although revenue rulings are not binding on this Court, they may be helpful in interpreting a statute based on their own intrinsic value. See *Stubbs, Overbeck & Associates, Inc. v. United States,* 445 F.2d 1142, 1146-1147 (5th Cir. 1971); *Crow v. Commissioner,* 85 T.C. 376 (1985). We find the analysis in Revenue Ruling 80-129 useful in approaching these cases. The revenue ruling is analogous to the situation before us in that Dr. Burton, the sole shareholder-employee of the P.A., liquidated the P.A. and continued his surgical practice utilizing a new business form, a sole proprietorship. For the same reasons that the shareholder-employees who liquidated their corporation and continued the same business in the partnership form were not separated from the service, Dr. Burton, who liquidated his P.A. and continued his surgical practice in the sole proprietorship form, was also not separated from the service.

We conclude that the distributions which petitioners received in 1985 and 1986 do not qualify as lump-sum distributions because they were not made on account of Dr. Burton's separation from the service of the P.A.: only a technical change in the employment relationship occurred, and no meaningful change in the beneficial ownership of the business occurred. There was no severance or termination as contemplated by section 402(e).

Dr. Burton's liquidation of the P.A. resulted in only a technical change in the employment relationship. *Gittens v. Commissioner,* 49 T.C. 419 (1968). It is well established that the liquidation of a corporate employer generally does not cause a separation from the service if the employee continues to work in the same capacity for the transferee of the employer's assets. *United States v. Haggart, supra; Gegax v. Commissioner, supra.* When Dr. Burton liquidated the professional corporation, all assets remaining in the P.A. were distributed to him in accordance with section 337, and he carried on the same medical practice without interruption.

Our conclusion that there was only a technical change in the employment relationship is supported by the fact that Dr. Burton continued performing the same services as a sole

proprietor as he had performed in the corporate form. See *Reinhardt v. Commissioner,* 85 T.C. 511 (1985); *Bolden v. Commissioner,* 39 T.C. 829 (1963); *Ridenour v. United States,* 3 Cl. Ct. 128 (1983). Dr. Burton continued to own the business after liquidation. See *United States v. Haggart, supra; Gegax v. Commissioner, supra.* His duties, responsibilities, and location did not change when the P.A. was liquidated. See *United States v. Haggart, supra* at 452; *United States v. Johnson,* 331 F.2d 943 (5th Cir. 1964). Moreover, the ultimate business decisions as to the operation of the surgical practice were in Dr. Burton's hands both before and after the liquidation.

In addition, the liquidation did not result in a meaningful change in the beneficial ownership of the surgical practice. Petitioners contend that, under the Texas Professional Association Act, the P.A. was Dr. Burton's *separate property* before the liquidation and after the liquidation the liquidating distributions were commingled with the community estate and became the property of both petitioners. As a result of the liquidation and commingling, petitioners contend that there was a beneficial change in ownership. Petitioners rely on the community property law of Texas to support their assertion. However, section 402(e)(4)(G) clearly provides that the provision which defines lump-sum distributions to include distributions made on account of an employee's separation from the service shall be applied without regard to community property laws. See sec. 402(e)(4)(A)(iii). Petitioners did not present any reason why section 402(e)(4)(G) was not applicable in this case. Therefore, petitioners' argument with respect to the community property law of Texas is without merit.

In determining whether there is a separation from the service, the question of whether there was a beneficial change in the ownership of a business is especially relevant in the context of professional associations and closely held corporations. It is unlikely that the shareholders of these types of entities would transfer beneficial ownership of the company's business solely to take advantage of lump-sum treatment. In these cases, the alteration of ownership from a professional association to a sole proprietorship does not constitute a change in beneficial ownership since there was no change in the beneficial ownership of the business assets.

There was a continuity of ownership before and after the liquidation; petitioners owned 100 percent of Dr. Burton's surgical practice before and after the liquidation.

Petitioners bear the burden of establishing that there was a substantial change in the makeup of employees insofar as this is relevant to whether a separation from the service occurred. Rule 142(a); see *Gittens v. Commissioner, supra.* The records in these cases do not establish a substantial change in the makeup of the employees. The records merely reveal that the number of employees participating in the P.A.'s qualified pension and profit-sharing plans varied from two to four employees from July 1983 through July 1985 and that at least one employee remained in Dr. Burton's employment after the P.A. was liquidated.

Petitioners rely on Judge Tannenwald's concurrence in *Gittens* to support their contention that there was a separation from the service. *Gittens v. Commissioner, supra* at 426. In his concurrence, Judge Tannenwald concluded that a substantial change in the makeup of employees was not always a prerequisite to qualify as a separation from the service. Rather, a change in the employer plus a meaningful change in the beneficial ownership of the business would constitute a separation from the service. *Id.* at 429. Petitioners failed to satisfy either of these criteria. First, there was only a technical change of the employer. Dr. Burton was the sole shareholder-employee of the P.A. and then became the sole proprietor of the same business. Second, petitioners failed to demonstrate that there was a beneficial change in ownership for purposes of the statute. Consequently, under either the majority's approach in *Gittens* or Judge Tannenwald's approach, petitioners failed to establish that the distributions qualified as lump-sum distributions. Cf. *Smith v. United States,* 460 F.2d 1005 (6th Cir. 1972).

Finally, to find there was a separation from the service in these cases would contravene the legislative policy behind section 402(e)(4)(A). In addition to the policy of encouraging lump-sum distributions as a means to facilitate the mobility of employees and their retirement funds as they change jobs, we expressed numerous other policy reasons for narrowly construing the situations which qualify for lump-sum treatment in *Reinhardt v. Commissioner, supra* at 525:

Congress was not trying just to alleviate the effects of bunching of income whenever an employee receives a lump-sum distribution from a qualified plan *for any reason.* The congressional policy was more narrowly aimed at discouraging early distributions before retirement age and yet preserving portability of pension funds when an employee actually separates from the service of his employer before retirement age. Hence, the favorable tax treatment does not apply when qualified pension and profit-sharing plans are terminated because that could encourage abuses of early distributions unrelated to retirement purposes; the favorable tax treatment applies to distributions narrowly restricted to situations where the employee, before retirement age, completely severs his connection with his employer as a result of death, disability, attaining age 59½ (usually for the self-employed), or separation from the service. * * * [Citations and fn. ref. omitted].

See *Ridenour v. United States,* 3 Cl. Ct. at 136-137.

Underpinning the interpretation of the phrase "separation from the service" is the congressional concern with changes in employment involving no structural change in the employer, such as the liquidation of a subsidiary into its parent corporation, and a continuation of the business and employment relationship qualifying for preferential tax treatment. A merely formal or technical change in employment status, as where an employer's business is transferred in a liquidation or reorganization and the employee continues to work in a similar capacity for the transferee, is not a separation from the service for purposes of section 402(a)(2) and (e). See *United States v. Johnson,* 331 F.2d 943, 948 (5th Cir. 1964).

Petitioners failed to establish that the distributions qualify as lump-sum distributions for a second reason. Section 402(e)(4)(A)(iii) requires that a distribution become payable "on account of" the employee's separation from the service in order to qualify for the preferential lump-sum treatment. Respondent contends that the distributions in this case were made "on account of" the plans' terminations, not on account of Dr. Burton's separation from the service. Petitioners bear the burden of demonstrating that Dr. Burton's right to receive the distributions originated on his separation from the service of the P.A., rather than the termination of the pension and profit-sharing plans. Rule 142(a); *Sarmir v. Commissioner,* 66 T.C. 82, 88 (1976); *Schlegel v. Commissioner,* 46 T.C. 706 (1966).

Dr. Burton terminated the pension and profit-sharing plans on July 1, 1984. The P.A. was liquidated on or about October 30, 1984. Petitioners received distributions from the plans in December 1985 and January 1986. Even if we were to accept petitioners' argument that Dr. Burton was separated from the service of the corporation as of the time of its liquidation, petitioners did not present any evidence to establish that the distributions were on account of any separation of service rather than on account of the plans' terminations. Instead, in endeavoring to rebut respondent's argument petitioners merely attempted to distinguish the line of cases which respondent presented to support her contentions. Looking at the record as a whole, we conclude that petitioners failed to establish the requisite causal relationship between any separation of service and the distributions. Consequently, for this additional reason, petitioners are not entitled to lump-sum treatment for the years at issue.

Section 402(e) was intended to help taxpayer-employees who unexpectedly or involuntarily receive in a lump sum what they expected to receive periodically as their pension at retirement. Here, Dr. Burton voluntarily liquidated his P.A. and terminated the pension and profit-sharing plans, but continued to carry on the same business as a sole proprietorship. See *United States v. Johnson, supra* at 948; *Reinhardt v. Commissioner,* 85 T.C. 511, 526 (1985). Lump-sum treatment was not intended to benefit taxpayers in such circumstances. Petitioners could have rolled over the distributions and avoided the tax consequences that follow an early distribution from qualified pension and profit-sharing plans. Petitioners chose to receive the cash distributions and must be taxed accordingly.

To reflect the foregoing,

*Decisions will be entered for respondent.*