CLARENCE J. HYLTON, JR. AND ROBERTA J. HYLTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hylton v. Commissioner
Docket No. 12803-93
United States Tax Court
T.C. Memo 1995-27; 1995 Tax Ct. Memo LEXIS 28; 69 T.C.M. (CCH) 1706; January 23, 1995, Filed *28 Decision will be entered for respondent. For petitioners: Alan S. Zipp. For respondent: Alan R. Peregoy. DAWSON, ARMEN
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr., pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1990 in the amount of $ 103,188.28. This amount includes the 10-percent additional tax imposed under section 72(t) on early distributions from qualified retirement plans. Respondent also *29 determined that petitioners are liable for excise taxes under sections 4973 and 4980A for the taxable year 1990 in the total amount of $ 22,454. [2]
The only issue for decision is whether the Transfer Refund distribution (the Transfer Refund) received by petitioner Clarence J. Hylton, Jr., from the Teachers' Retirement System of the State of Maryland was paid "on account of the employee's separation from the service" under section 402(e)(4)(A)(iii) so that it would qualify as a partial distribution eligible for rollover treatment under section 402(a)(5)(D). The parties agree that if we hold that the Transfer *30 Refund was paid "on account of the employee's separation from the service," then petitioners will not be liable for any of the taxes determined by respondent to be due. Similarly, the parties agree that if we hold that the Transfer Refund was not paid "on account of the employee's separation from the service," then petitioners will be liable for all of the taxes that respondent has determined to be due. [3]
*31 FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioners resided in Mt.Airy, Maryland, at the time their petition was filed with the Court. Petitioner Clarence J. Hylton, Jr. (petitioner), was employed by the Board of Education of Montgomery County, Maryland, as a teacher in the public schools. During his career, petitioner taught mathematics and also served as a resource teacher responsible, inter alia, for developing and improving curriculum. He retired after 30 years of service on July 1, 1990. During most of his teaching career, petitioner was a member of the Teachers' Retirement System of the State of Maryland (the Retirement System). The Retirement System was, and continues to be, a qualified defined benefit plan under section 401(a) requiring mandatory nondeductible employee contributions. The trust maintained as part of the plan is tax exempt under section 501(a). Near the end of his teaching career, petitioner elected to transfer from the Retirement System to the Teachers' Pension System of the State of Maryland (the Pension System). Like the Retirement System, the Pension System is a qualified defined benefit plan under section *32 401(a), and the trust maintained as part of the plan is tax exempt under section 501(a). Petitioner originally elected to transfer from the Retirement System to the Pension System in April 1989. However, he revoked his election in May 1989 because of concern over the possible tax effects of the distribution that he would receive upon transferring from the Retirement System to the Pension System. In November 1989 petitioner again elected to transfer from the Retirement System to the Pension System. On the transfer application, petitioner specifically opted to receive in a lump sum the distribution that he would receive upon transferring from the Retirement System to the Pension System. Petitioner's election to transfer from the Retirement System to the Pension System was effective January 1, 1990. As a result of the transfer election, petitioner received a distribution (the Transfer Refund) from the Retirement System in the amount of $ 291,853.70, which amount was equal to at least 50 percent of the balance to his credit in the Retirement System. Petitioner received the Transfer Refund by two checks, one dated January 31, 1990, in the amount of $ 291,542.31 and the other dated *33 May 31, 1990, in the amount of $ 311.39. Petitioner endorsed both checks below a printed notice that stated, in part, as follows: By endorsement hereon I understand that I have irrevocably transferred my membership from the Retirement System of the State of Maryland to the Pension System of the State of Maryland and that my benefits will be less under my new plan than under my old plan.
Petitioner's Transfer Refund of $ 291,853.70 consisted of three components: $ 35,751.50 in previously taxed contributions made by petitioner during the period of his membership in the Retirement System; $ 1,158.20 in taxable employer "pickup" contributions; and $ 254,944.00 in taxable earnings. On March 30, 1990, petitioner deposited $ 254,944.00 of the Transfer Refund into an individual retirement account (IRA). Petitioners planned for retirement by developing a financial plan. Petitioner's election to transfer from the Retirement System to the Pension System was one element of their financial plan. Petitioner decided to retire under the Pension System because he concluded that retirement under that system would provide greater security for his family than would retirement under the *34 Retirement System. On May 18, 1990, petitioner applied for a normal service retirement from the Pension System. Petitioner's application was accepted, and petitioner retired effective July 1, 1990. As a result of his retirement from the Montgomery County public schools, petitioner is receiving a normal service retirement pension from the Pension System based on Pension System plan benefits. If petitioner had not transferred from the Retirement System to the Pension System but had retired under the Retirement System, he would not have been entitled to the Transfer Refund, but he would have received a greater monthly retirement benefit. Petitioner had the option to voluntarily transfer from the Retirement System to the Pension System at any time after January 1, 1980. Petitioner's election to transfer to the Pension System did not obligate him to retire at any particular time. However, in order to retire under the Pension System, petitioner was obligated to elect to transfer to the Pension System before submitting a retirement application. Petitioner received a Form 1099-R from the Maryland State Retirement Agency for 1990 in respect of the Transfer Refund. The Form 1099-R disclosed *35 a gross distribution in the amount of $ 291,853.70 and a taxable amount of $ 256,102.20. Of the latter amount, $ 1,158.20 was identified as employer "pickup" contributions. The difference between the gross distribution and the taxable amount, i.e., $ 35,751.50, was identified as the amount of petitioner's previously taxed contributions. On their Federal income tax return for 1990, petitioners disclosed the Transfer Refund, identifying the "pension amount received" as $ 256,102 and the "taxable amount" as $ 1,158. Petitioners treated the difference between these two amounts, i.e., $ 254,944, as a tax-free rollover. In the notice of deficiency, respondent determined that so much of the Transfer Refund as exceeded (1) petitioner's contributions, and (2) the amount previously included in income, was currently taxable to petitioners. [4]
*36 OPINION Petitioners contend that the Transfer Refund received by petitioner from the Retirement System was paid "on account of [petitioner's] separation from the service" within the meaning of section 402(e)(4)(A)(iii). Respondent contends to the contrary. The parties agree that our resolution of this matter will dictate whether the Transfer Refund qualifies as a partial distribution eligible for rollover treatment under section 402(a)(5)(D). Before we consider the pension tax provisions of the Internal Revenue Code that will guide our disposition of the issue in dispute, we need to consult relevant provisions of Maryland law that prescribe the retirement programs for the State's teachers. In 1979, the Maryland State legislature (the legislature) adopted legislation, effective January 1, 1980, which created the Pension System and enabled participants in the Retirement System to voluntarily transfer to the Pension System. See Md. Ann. Code, art. 73B, secs. 83(8), 86B(6), 89(1)(e), 141, 142 (1988); see also O'Connor v. Commissioner, T.C. Memo. 1994-170 (addressing the application of sec. 72(t) to a Transfer Refund distribution); Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358 (D. Md. 1984) *37 (discussing the Retirement System and the Pension System). Teachers hired before 1980 who were covered by the Retirement System were required to make nondeductible contributions of as much as 5 percent of their salaries. Md. Ann. Code, art. 73B, sec. 89(1)(a) (1988). In return, the teachers received defined benefits, including unlimited postretirement cost-of-living adjustments (COLAs'). Md. Ann. Code, art. 73B, secs. 86A, 83(9) (1988). Apparently concerned about the actuarial integrity of the Retirement System, due in particular to the unlimited COLA provision, the legislature created the Pension System. Md. Ann. Code, art. 73B, sec. 141 (1988). Teachers hired after 1979 did not have the option of participating in the Retirement System and were generally required to participate in the Pension System. Md. Ann. Code, art. 73B, sec. 142(1) (1988). Significantly, such teachers were generally not required to make nondeductible contributions. See Maryland State Teachers Association v. Hughes, supra.However, their postretirement COLAs' were capped at 3 percent. Md. Ann. Code, art. 73B, sec. 146(d) (1988). The legislature afforded teachers *38 hired before 1980 the option of either remaining as members in the Retirement System or transferring to the Pension System. Such teachers, who could transfer to the Pension System only prior to retirement, did so by executing a waiver of all benefits under the Retirement System and by accepting instead the benefits offered by the Pension System. Md. Ann. Code, art. 73B, sec. 142(2) (1988). By transferring, most teachers could avoid having to make mandatory and nondeductible contributions from their salary. See Maryland State Teachers Association v. Hughes, supra.However, the more significant inducement offered by the legislature was a refund of a part of the transferring teacher's previously paid contributions, together with the earnings thereon (the earnings). Md. Ann. Code, art. 73B, sec. 89(1)(e) (1988). The earnings were calculated by utilizing "the average rate of interest for the 5 years preceding the year of transfer compounded annually." Md. Ann. Code, art. 73B, sec. 86C(6)(b) (1988). [5]
*39 As stated above, petitioner elected to transfer from the Retirement System to the Pension System in anticipation of his retirement. As a consequence of this election, he received the Transfer Refund in the amount of $ 291,853.70. Petitioner deposited $ 254,944 of the Transfer Refund into an IRA within 60 days of the distribution. Section 402(a)(1) provides that, as a general rule, distributions from a qualified plan are to be taxed in the year actually distributed. However, section 402(a)(5)(A) provides that certain distributions may be rolled over into an eligible retirement plan (such as an IRA) without being taxed in the year distributed. In order for a partial distribution to qualify for rollover treatment under section 402(a)(5)(A), certain requirements must be satisfied. Sec. 402(a)(5)(D). As relevant herein, section 402(a)(5)(D)(i)(I) provides that rollover treatment is available in the event of a partial distribution only if "such distribution is payable as provided in clause (i), (iii), or (iv) of subsection (e)(4)(A) (without regard to the second sentence thereof)". For purposes of the present case, only clause (iii) of subsection (e)(4)(A) is relevant. The parties *40 dispute the applicability of clause (iii) of section 402(e)(4)(A). When read with section 402(e)(4)(A), clause (iii) speaks of a distribution or payment from a qualified retirement plan which becomes payable to the recipient "on account of the employee's separation from the service". The parties agree that petitioner's retirement constituted a "separation from the service" within the meaning of the statute. In dispute is whether the Transfer Refund became payable to petitioner "on account of" his retirement. The phrase "on account of" is not defined in either the Internal Revenue Code or in the accompanying regulations.[6] See Burton v. Commissioner, 99 T.C. 622, 626 (1992). The burden of proving that the Transfer Refund was received "on account of" petitioner's separation from the service is on petitioners. Rule 142(a); Burton v. Commissioner, supra at 632; Sarmir v. Commissioner, 66 T.C. 82, 88 (1976). *41 Petitioners premise their argument that the Transfer Refund qualifies for rollover treatment on the maxim that causa causae est causa causati, which is generally translated as "the cause of a cause is the cause of the thing caused". Black's Law Dictionary 220 (6th ed. 1990); cf. Baroldy v. Ortho Pharmaceutical Corp., 760 P.2d 574 (Ariz. Ct. App. 1988)(applying the principle in the context of a tort suit). [7] Specifically, petitioners contend that -- petitioner's separation from service (retirement) caused him to make a pension annuity election which caused him to receive * * * [the Transfer Refund]. Consequently, the distribution (thing caused) was caused by the election regarding retirement benefits which was caused by his planned retirement (separation from service) which means that the distribution was payable on account of the separation from service.
Thus, petitioners concede that petitioner received the Transfer Refund because he elected to transfer from the Retirement System to the Pension System. In other words, petitioners concede that petitioner's election to transfer from the Retirement System to the Pension System was the direct *42 cause of the Transfer Refund. Under Maryland law, there was no direct causal link between the election to transfer to the Pension System and petitioner's retirement. Similarly, under Maryland law, there was no direct causal link between the receipt of the Transfer Refund and petitioner's retirement. Petitioner was not obliged, under Maryland law, to transfer to the Pension System either in order to continue working or in order to retire. Similarly, under Maryland law, petitioner was not obliged to retire as a consequence of his election to transfer to the Pension System. In sum, the event that under Maryland law triggered the distribution to him of the Transfer Refund was his transfer from one pension plan to the other, not his retirement from teaching. The Transfer Refund became payable to him upon his transfer between plans whether he retired or not. [8]
*43 Despite the lack of any direct causal link, petitioners view the term "on account of" as contemplating the indirect cause of the Transfer Refund, which they contend was petitioner's intent to "separate from the service". Therefore, according to petitioners, the relevant and controlling question is what caused petitioner to make the election to transfer when he did, rather than what was the immediate cause of petitioner's receipt of the Transfer Refund. In contrast, respondent looks to the direct or immediate cause of the Transfer Refund. Accordingly, respondent contends that the Transfer Refund was not payable "on account of" petitioner's retirement. For the reasons discussed below, we agree with respondent. In Gunnison v. Commissioner, 54 T.C. 1766 (1970), affd. 461 F.2d 496 (7th Cir. 1972), the Court considered the language of section 402(a)(2) as in effect for 1960. As relevant, that language read -- if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year * * * on account of the employee's death or other separation from the service, or on account *44 of the death of the employee after his separation from service, the amount of such distribution * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. [Emphasis added.]
In Gunnison, the Court analyzed whether the taxpayer was entitled to treat certain distributions, received from two qualified employee Trusts (the Trusts), as capital gains. The agreement between the taxpayer's father (the employee) and his employer was that the employee's sons (of whom the taxpayer was one) would receive distributions from the Trusts as the contingent beneficiaries if their mother, the primary beneficiary (the primary beneficiary), died prior to receiving the full distribution from the Trusts. After the employee died, amounts were paid to the primary beneficiary, but she died before receiving the full distribution. Therefore, the taxpayer received the distributions in issue as the contingent beneficiary. There was no dispute that if the primary beneficiary had lived, she would have been entitled to the full distribution. The taxpayer was required to show that he received the distributions "on account of" his father's death in order *45 to be entitled to the preferential tax treatment he sought. However, the Court held that the taxpayer was not entitled to preferential treatment because his receipt of the distributions was not due solely to the employee's death, but was due also to the death of the primary beneficiary. Thus, under section 402(a)(2), as in effect for 1960, the taxpayer in Gunnison was obliged to treat the distributions from the Trusts as ordinary income. In holding as it did in Gunnison, the Court considered the meaning of the term "on account of". We concluded that -- Should this phrase be interpreted as requiring the event to be a mere link in a chain of causalities, the coverage of the statute would be widely extended. We can find no foundation for this in the history, in the statutory wording or in the case law. [Gunnison v. Commissioner, supra at 1773.]
Similarly, we find that petitioners' argument, premised on the maxim causa causae est causa causati, would widely extend the coverage of section 402(e)(4)(A)(iii). In fact, we think that the statute might be extended beyond recognition. If we were to adopt petitioners' argument, we would *46 risk seriously undermining, if not nullifying, the limitations on eligibility for a tax-free rollover that Congress imposed on taxpayers by enacting section 402(a)(5)(D)(i)(I) and (e)(4)(A)(iii). Petitioners' interpretation of the statutory term "on account of" either: (1) Requires superimposition of a "facts and circumstances test" on the statutory framework or (2) enables a taxpayer receiving a distribution from a qualified retirement plan to claim that the distribution had been received "on account of" the taxpayer's intention to separate from service. Either result of petitioners' interpretation would be possible regardless of whether a taxpayer actually separates from the service. Neither result is consistent with the clear language of the statute. Sec. 402(e)(4)(A)(iii). Petitioners have shown that petitioner's election to transfer to the Pension System, due to which election he received the Transfer Refund, was related to his retirement planning. In other words, they have demonstrated that the decision to retire was a "link in the chain of causalities" leading to the receipt of the Transfer Refund. See Gunnison v. Commissioner, supra at 1773. *47 However, we view petitioner's separation from service as no more than a "mere link in the chain of causalities" leading to the receipt of the Transfer Refund. Id. (emphasis added). Accordingly, we hold that petitioner did not receive the Transfer Refund on account of his retirement. Rather, he received the Transfer Refund because of his election to transfer from the Retirement System to the Pension System, an election that, under Maryland law, lacked the requisite connection to petitioner's separation from service. To give effect to our disposition of the disputed issue and the parties' stipulated agreement, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts. Sec. 4980A imposes a 15-percent excise tax on excess distributions from qualified retirement plans. Both of these taxes are included within ch. 43 of the Internal Revenue Code. They are therefore subject to the deficiency procedures set forth in subch. B of ch. 63 of the Internal Revenue Code. See sec. 6211(a).↩
3. We note that the Unemployment Compensation Amendments of 1992, Pub. L. 102-318, 106 Stat. 290, applicable to distributions after Dec. 31, 1992, altered the rules relating to rollovers. Specifically, during the year in issue, sec. 402(a)(5)(D) provided that a taxpayer could roll over a partial distribution only when the distribution satisfied certain requirements, including certain of those found in sec. 402(e)(4)(A). As relevant here, a distribution which is neither (1) paid "on account of the employee's death", (2) paid "on account of the employee's separation from the service", or (3) paid "after the employee has become disabled", would not have been eligible to be rolled over. Sec. 402(a)(5)(D)(i)(I), (e)(4)(A)(i), (iii), (iv). For distributions after 1992, sec. 402(c)(4) prescribes those circumstances under which a taxpayer can roll over a distribution. However, sec. 402(c)(4) does not require that the distribution be made in accord with sec. 402(d)(4)(A), which has replaced sec. 402(e)(4)(A)↩.
4. In the notice of deficiency, respondent determined that petitioner's previously taxed contributions amounted to $ 36,598. This amount is $ 846 greater than the amount disclosed on petitioner's Form 1099-R and the amount stipulated by the parties. The discrepancy is unexplained in the record.↩
5. Petitioner's Transfer Refund in the amount of $ 291,853.70 consisted of $ 35,751.50 in previously taxed contributions made by petitioner, $ 1,158.20 in taxable employer "pick up" contributions, and $ 254,944 in taxable earnings.↩
6. The definition provided by the dictionary, "by reason of" or "because of," is not enlightening. See Webster's Third New International Dictionary (1981).↩
7. The Tax Court has never applied this maxim.↩
8. Indeed, by electing to transfer to the Pension System and receiving the Transfer Refund, petitioner was at liberty to dispose of the Transfer Refund as he saw fit. In other words, Maryland law did not prescribe or otherwise limit the options available to petitioner in disposing of the Transfer Refund. Thus, for example, petitioner was free to use the Transfer Refund to pay off existing debts, to finance his children's college education, or to purchase a new house.↩