JAMES R. BROWN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 20023-92
United States Tax Court
T.C. Memo 1995-93; 1995 Tax Ct. Memo LEXIS 95; 69 T.C.M. (CCH) 2028; March 6, 1995, Filed *95 Decision will be entered for respondent, with the limitation noted above regarding the amount of the deficiency in excise tax. James R. Brown, pro se. For respondent: Alan R. Peregoy DAWSON, ARMEN
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Robert N. Armen, Jr. pursuant to the provisions of section 7443A(b)(4) of the Internal Revenue Code of 1986, as amended, and Rules 180, 181, and 183. [1] The Court agrees with and adopts the Opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE ARMEN, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1989 in the amount of $ 59,701. This amount includes the 10-percent additional tax imposed under section *96 72(t) on early distributions from qualified retirement plans. Respondent also determined a deficiency in excise tax under section 4973 for the taxable year 1989 in the amount of $ 9,965. [2]
The pivotal issue for decision is whether the distribution received by petitioner James R. Brown in 1989 from the Maryland State Teachers' Retirement System qualifies for tax-free rollover treatment under section 402(a)(5). The resolution of this issue turns on whether the distribution constitutes either a "qualified total distribution" as defined by section 402(a)(5)(E)(i) or a "partial distribution" as defined by section 402(a)(5)(D)(i). If we conclude that the distribution in question does not qualify *97 for tax-free rollover treatment, then we must also decide whether petitioner is liable for (1) the 10-percent additional tax under section 72(t) for the taxable year 1989, and (2) the excise tax under section 4973 for the taxable year 1989. FINDINGS OF FACT This case was submitted fully stipulated under Rule 122, and the facts stipulated are so found. Petitioner resided in Columbia, Maryland, at the time that his petition was filed with the Court. Petitioner was a teacher in 1989 until he retired effective July 1, 1989. At the time that he retired, petitioner was 54 years old. Shortly before his retirement, petitioner elected to transfer to the Teachers' Pension System of the State of Maryland (the Pension System). Until the transfer became effective on June 1, 1989, petitioner was a member of the Teachers' Retirement System of the State of Maryland (the Retirement System). [3]
*98 The Retirement System is a qualified defined benefit plan under section 401(a). The Retirement System requires mandatory nondeductible employee contributions. The Pension System is also a qualified defined benefit plan under section 401(a) but generally does not require mandatory nondeductible employee contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a). As a result of his election to transfer to the Pension System, petitioner received a distribution from the Retirement System in the amount of $ 168,081.23 (the Transfer Refund). Petitioner received this amount in the form of a check dated July 14, 1989. The Transfer Refund consisted of $ 18,797.47 in previously taxed contributions made by petitioner during his employment tenure as a teacher and $ 149,283.76 of earnings. The earnings constitute the taxable portion of the Transfer Refund. If petitioner had not transferred to the Pension System but rather had remained a member of the Retirement System, he *99 would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity, at age 60. He would not, however, have been entitled to receive a Transfer Refund because a Transfer Refund is only payable to those who elect to transfer from the Retirement System to the Pension System. As a result of transferring from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System. As a member of the Pension System, petitioner receives a retirement benefit based upon his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, because petitioner received the Transfer Refund because of his election to transfer from the Retirement System to the Pension System, petitioner's monthly annuity is less than the monthly annuity he would have received if he had not transferred to the Pension System but had retired under the Retirement System. On July 22, 1989, petitioner used the proceeds from the Transfer Refund to purchase an individual retirement annuity (IRA) for $ 149,283.76 and an annuity contract that *100 was not an IRA for $ 18,797.47. On his Federal income tax return for 1989, petitioner did not report any part of the Transfer Refund as income. In the notice of deficiency, respondent determined that the Transfer Refund was not eligible for tax-free rollover treatment under section 402(a)(5). Therefore, respondent determined that, under sections 402(a)(1) and 72, the taxable portion of the Transfer Refund ($ 149,283.76) was includable in petitioner's gross income. As corollaries, respondent also determined that petitioner is liable for (1) the 10-percent additional tax under section 72(t), and (2) the excise tax under section 4973. OPINION Rollover Issue
We begin with the pivotal issue for decision, namely, whether the Transfer Refund received by petitioner in 1989 from the Retirement System qualifies for tax-free rollover treatment under section 402(a)(5). As previously noted, the resolution of this issue turns on whether the Transfer Refund constitutes either a "qualified total distribution" as defined by section 402(a)(5)(E)(i) or a "partial distribution" as defined by section 402(a)(5)(D)(i). See Wheeler v. Commissioner, T.C. Memo. 1993-561 *101 (to qualify under the rollover provisions, the distribution must be either a qualified total distribution or a partial distribution). As a general rule, a distribution from a qualified plan, such as the Retirement System, is taxable to the recipient in the year distributed under the rules relating to annuities. Sec. 402(a)(1); see sec. 72. However, a distribution is not included in income if the distribution qualifies for treatment as a tax-free rollover. Accordingly, we must examine the requirements of section 402(a)(5). Section 402(a)(5) provides that a "qualified total distribution" from a qualified plan is not includable in gross income in the taxable year received to the extent that the distribution is rolled over to an eligible retirement plan within 60 days. A "partial distribution" may also be rolled over tax-free within 60 days, provided that other requirements, detailed in section 402(a)(5)(D) and discussed below, are satisfied. A "qualified total distribution" is defined, in relevant part, as one or more distributions "which constitute a lump sum distribution within the meaning of subsection (e)(4)(A)". Sec. 402(a)(5)(E)(i)(II). A lump sum distribution, for purposes *102 of section 402, is defined in section 402(e)(4)(A) as follows: (A) Lump Sum Distribution. -- For purposes of this section * * *, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59 1/2, (ii) on account of the employee's separation from the service, or (iv) after the employee has become disabled * * *
from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 * * *. For purposes of this subsection, the balance to the credit of the employee does not include the accumulated deductible employee contributions under the plan (within the meaning of section 72(o)(5)). [Emphasis added.]
There is no dispute that the trust forming a part of the Retirement System is exempt from tax under section 501. Moreover, there is no dispute that the distribution was made within a single taxable year and that it was not made either on account of the employee's death or disability. There is similarly *103 no dispute regarding petitioner's age. [4] Therefore, with regard to the question of whether the Transfer Refund was a "qualified total distribution", the only issues in dispute are: (1) Whether petitioner received the "balance to the credit" when he received the Transfer Refund, and (2) whether the Transfer Refund was received on account of the employee's separation from the service. In support of her determination that petitioner did not receive the "balance to the credit" when he transferred from the Retirement System to the Pension System, respondent relies on the fact that petitioner's years of creditable service under the Retirement System carried over to the Pension System, see Md. Code Ann., art. 73B, sec. 144(4) (1988), and that those years of service increased the monthly annuity benefit to which petitioner is entitled. By contrast, petitioner contends that he received the entire account balance from the Retirement System when he received the *104 Transfer Refund. [5] Therefore, petitioner concludes that the "balance to the credit" requirement of section 402(e)(4)(A) is satisfied. We begin our analysis with section 402(e)(4)(C). That section provides, in relevant part, as follows: (C) Aggregation of Certain Trusts and Plans. -- For purposes of determining the balance to the credit of an employee under subparagraph (A) -- (i) all trusts which are part of a plan shall be treated as a single trust, all pension plans maintained by the employer shall be treated as a single plan * * * [Emphasis added.]
During the year *105 in issue, the State of Maryland maintained both the Retirement System, in which petitioner participated until June 1, 1989, and the Pension System, to which petitioner transferred on that date. Accordingly, in order to decide whether petitioner received the "balance to the credit", we must treat the Retirement System and the Pension System as a single pension plan. Sec. 402(e)(4)(C). Under Maryland law, petitioner's annuity under the Pension System is calculated by taking into account petitioner's "average final compensation" and petitioner's years of "creditable service". Md. Code Ann., art. 73B, sec. 145(2) (1988). Because section 402(e)(4)(C) requires that we treat the Retirement System and the Pension System as a single pension plan, we conclude that, by transferring from the Retirement System to the Pension System, petitioner did not forfeit his right to a future monthly annuity, but simply elected to receive an initial single payment to be followed by a reduced monthly annuity. Effectively, petitioner's transfer allowed him to receive the "balance to the credit" in two parts, an initial single payment to be followed by a reduced monthly annuity, based on all of his years *106 of creditable service and on his salary during those years. See Green v. Commissioner, T.C. Memo. 1994-340. In view of the foregoing, we hold that the Transfer Refund did not constitute a lump sum distribution within the meaning of section 402(e)(4)(A) because petitioner did not receive the "balance to the credit" when he transferred from the Retirement System to the Pension System. [6] Accordingly, the Transfer Refund received by petitioner was not a "qualified total distribution". See Hamilton v. Commissioner, T.C. Memo. 1994-633 (addressing whether taxpayer had received the "balance to the credit" in the context of whether the taxpayer was entitled to compute tax on a transfer refund using the 10-year forward averaging method set forth in section 402(e)(1)); Hoppe v. Commissioner, T.C. Memo. 1994-635 (same); see also Wheeler v. Commissioner, supra.
*107 With regard to petitioner's second argument, i.e., that the Transfer Refund constituted a "partial distribution" eligible for a tax-free rollover, we turn to sections 402(a)(5)(E)(v) and 402(a)(5)(D). A "partial distribution" is defined as "any distribution to an employee of all or any portion of the balance to the credit of such employee in a qualified trust; except that such term shall not include any distribution which is a qualified total distribution." Sec. 402(a)(5)(E)(v). Accordingly, in order to be a "partial distribution" eligible for a tax-free rollover, the Transfer Refund need not constitute the entire "balance to the credit". However, in order to eligible for a tax-free rollover, the "partial distribution" must be "payable as provided in clause (i), (iii), or (iv) of subsection (e)(4)(A) (without regard to the second sentence thereof)". Sec. 402(a)(5)(D)(i)(I). As relevant, section 402(e)(4)(A) provides that a distribution must be made either "(i) on account of the employee's death", "(iii) on account of the employee's separation from the service", or "(iv) after the employee has become disabled". Petitioner does not contend that the Transfer Refund was received *108 either on account of his death or after he became disabled. Petitioner does not contend that the Transfer Refund was received on account of death or after any disability. Therefore, our analysis is limited to section 402(e)(4)(A)(iii). The phrase "on account of" is not defined in either the Internal Revenue Code or in the accompanying regulations.[7] See Burton v. Commissioner, 99 T.C. 622, 626 (1992). The burden of proving that the Transfer Refund was received "on account of" petitioner's separation from the service is on petitioner. Rule 142(a); Burton v. Commissioner, supra at 632; Sarmir v. Commissioner, 66 T.C. 82, 88 (1976). This burden is particularly heavy because we have recently held, in a case involving similar facts and circumstances, that a taxpayer's receipt of a distribution from the Retirement System upon transferring to the Pension System was not received on account of his retirement but rather on account of the transfer. Hylton v. Commissioner, T.C. Memo. 1995-27. *109 As we discussed in Hylton v. Commissioner, supra, under Maryland law, there is no direct causal link between a taxpayer's election to transfer to the Pension System and the taxpayer's retirement. Similarly, under Maryland law, there is no direct causal link between the receipt of the Transfer Refund and a taxpayer's retirement. No such causal link exists because a taxpayer is not obliged, under Maryland law, to transfer to the Pension System either in order to continue working or in order to retire. Similarly, under Maryland law, a taxpayer is not obliged to retire as a consequence of the election to transfer to the Pension System. Upon electing to transfer to the Pension System and receiving the Transfer Refund, petitioner was at liberty to dispose of the Transfer Refund as he saw fit. In other words, Maryland law did not prescribe or otherwise limit the options available to petitioner in disposing of the Transfer Refund. Hylton v. Commissioner, supra.
Petitioner has offered no compelling reason for us to depart from either our analysis or conclusion in Hylton v. Commissioner, supra. *110 Therefore, we hold that petitioner did not receive the Transfer Refund on account of his retirement. Rather, petitioner received the Transfer Refund on account of his election to transfer from the Retirement System to the Pension System, an election that, under Maryland law, lacked the requisite connection to petitioner's separation from the service. Having concluded that the Transfer Refund was not eligible for tax-free rollover treatment under section 402(a)(5) as either a "qualified total distribution" or a "partial distribution", we sustain respondent's determination that the taxable part of the Transfer Refund is includable in petitioner's income in 1989. Section 72(t) Additional Tax Issue
We turn next to respondent's determination that petitioner is liable for the 10-percent additional tax under section 72(t) for the taxable year 1989. Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans. Subsection (1), which imposes the tax, provides in relevant part as follows: (1) Imposition of Additional Tax. -- If any taxpayer receives any amount from a qualified retirement plan * * *, the taxpayer's tax under this *111 chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.
By virtue of subsection (2) of section 72(t), the 10-percent additional tax does not apply to certain distributions. However, petitioner does not satisfy any of the statutory exceptions. See, supra note 3. Accordingly, we sustain respondent's determination that petitioner is liable for the 10-percent additional tax under section 72(t). See O'Connor v. Commissioner, T.C. Memo. 1994-170; Wheeler v. Commissioner, T.C. Memo. 1993-561. Excise Tax Issue
Finally, we turn to respondent's excise tax determination. Section 4973(a) imposes a 6-percent excise tax on excess contributions to an IRA. As relevant herein, an "excess contribution" is the amount in excess of the amount allowable as a deduction under section 219, exclusive of amounts properly rolled over tax-free. Respondent has conceded that a deduction of $ 2,000 was available to petitioner in 1989. Thus, as discussed above, because petitioner's Transfer Refund was not *112 eligible for tax-free rollover treatment, so much of petitioner's IRA contribution in 1990 that exceeds $ 2,000 is subject to excise tax under section 4973(a). Petitioner contributed $ 149,283.76 to an IRA in 1989. Accordingly, the contribution is subject to excise tax under section 4973(a) in the amount of $ 8,837 ($ 149,283.76 - $ 2,000 X .06). We therefore sustain respondent's determination regarding excise tax but only to the extent of $ 8,837. Conclusion
In order to give effect to our disposition of the disputed issues, Decision will be entered for respondent, with the limitation noted above regarding the amount of the deficiency in excise tax. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts and annuities. This tax is included within chapter 43 of the Internal Revenue Code. It is therefore subject to the deficiency procedures set forth in subchapter B of chapter 63 of the Internal Revenue Code. See sec. 6211(a)↩.
3. For a discussion of the Retirement System and the Pension System, see generally Hylton v. Commissioner, T.C. Memo. 1995-27; Hoppe v. Commissioner, T.C. Memo. 1994-635; Hamilton v. Commissioner, T.C. Memo. 1994-633; Maryland State Teachers Association v. Hughes, 594 F. Supp. 1353, 1357-1358↩ (D. Md. 1984).
4. Petitioner was born in 1934. He therefore turned 55 in 1989.↩
5. Respondent appears to concede implicitly that the Transfer Refund included all of petitioner's contributions and the earnings thereon. Cf. Wheeler v. Commissioner, T.C. Memo. 1993-561↩ (a member of the Retirement System did not receive the "balance to the credit" upon receiving a Transfer Refund; a portion of the member's contributions was transferred from the Retirement System to the Pension System).
6. We address the issue of whether the Transfer Refund was received "on account of his separation from the service" below, as part of our discussion of whether petitioner received a partial distribution.↩
7. The definition provided by the dictionary, "by reason of" or "because of," is not enlightening in this instance. See Webster's Third New International Dictionary (1981).↩