T.C. Memo. 2011-139

UNITED STATES TAX COURT

RAYMOND H. AND ANA A. RYAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11526-09.                    Filed June 21, 2011.

Gerald Brantley and Samuel Eastman, for petitioners.

Jeffrey D. Heiderscheit, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined a deficiency of $979
in petitioners' Federal income tax for 2006.  The deficiency
results from respondent's determination to impose the 10-percent
additional tax under section 72(t)[1] on the early deemed

---

[1]Unless otherwise indicated, all section references are to
(continued...)

distribution petitioner Raymond H. Ryan allegedly received from his qualified retirement plan in 2006. After concessions,[2] the issues for decision are: (1) Whether petitioners properly included in income the balance of a loan from a Federal Employees' Thrift Savings Plan (TSP) account as a deemed distribution under section 72(p); and (2) if so, whether petitioners are liable for the 10-percent additional tax on early distributions under section 72(t).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations are incorporated herein by this reference. Petitioners Raymond H. and Ana A. Ryan resided in Texas when they filed their petition. Petitioner Raymond H. Ryan (petitioner) worked as an aerospace engineer with the Department of the Air Force (Air Force) for 17 years.

In 2003, at the recommendation of a coworker, petitioner applied for a $50,000 general purpose loan from his TSP account. On the loan application petitioner requested a repayment term of 4 years with a biweekly repayment schedule. On February 19,

---

[1](...continued)
the Internal Revenue Code, as amended and in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[2]At trial petitioner Ana A. Ryan conceded that she is not entitled to relief under sec. 6015.

2003, the TSP Service Office approved petitioner's loan application. Petitioner received the $50,000 as a lump-sum loan and used the funds to pay off debt and purchase a parcel of land.

I. Removal From Service and Subsequent Appeals

In September 2005 the Air Force reassigned petitioner from Texas to Tinker Air Force Base (Tinker) in Oklahoma.[3] Petitioner requested that the Air Force delay the reassignment because of his medical condition. Petitioner's supervisor, Mark Kaestner (Mr. Kaestner), denied the request because suitable treatment for petitioner's medical condition was available near Tinker. Mr. Kaestner advised petitioner that he should request "use or lose" leave or sick leave.

After the initial denial petitioner contacted his third-line supervisor. Petitioner submitted additional medical information indicating that he could not perform all of the duties of the position at Tinker. The Air Force denied petitioner's second request on November 28, 2005. Mr. Kaestner again advised petitioner of the right to use various types of leave, and he informed petitioner in writing that he would be placed in absent

---

[3]On Apr. 20, 2010, the U.S. Court of Appeals for the Fifth Circuit issued an opinion affirming a decision of the U.S. District Court for the Western District of Texas. Ryan v. Dept. of the Air Force, 375 Fed. Appx. 371 (5th Cir. 2010). Pursuant to rule 201 of the Federal Rules of Evidence, we take judicial notice of the U.S. Court of Appeals for the Fifth Circuit's opinion and rely on it, in part, for the history of petitioner's litigation with the Air Force.

without leave (AWOL) status if he failed to report for duty or use available leave.

On November 23, 2005, petitioner emailed Mr. Kaestner to request 4 months of sick leave. Petitioner subsequently emailed Mr. Kaestner to request use or lose leave for December 12-30, 2005. Mr. Kaestner replied that the request for sick leave had been approved but that the request for use or lose leave remained under consideration.

Despite his earlier letter approving petitioner's sick leave request, Mr. Kaestner informed petitioner on December 22, 2005, that: (1) Beginning January 3, 2006, the Air Force would not approve any further leave, and (2) if petitioner failed to report to Tinker on January 3, the Air Force would place petitioner in AWOL status. Petitioner did not report to work.

On March 21, 2006, the Air Force removed petitioner from employment allegedly for excessive absence. Petitioner appealed the removal on two grounds: (1) Disability discrimination; and (2) retaliatory termination because of his whistleblowing activities (collectively, affirmative defenses). In an initial decision, the administrative law judge (ALJ) concluded that petitioner did not prove either of his affirmative defenses and upheld the Air Force's removal action. The ALJ stated that if an agency approves leave for unscheduled absences, the agency generally cannot remove the employee because of those absences.

However, under <u>Cook v. Dept. of the Army</u>, 18 M.S.P.R. 610 (1984), an agency may remove an employee if the employee made excessive use of unscheduled leave without pay (LWOP). The ALJ concluded that the <u>Cook</u> exception applied and upheld petitioner's removal.

Petitioner appealed the ALJ's initial decision, arguing that the ALJ made procedural errors and was biased and that petitioner proved sufficiently the whistleblower and discrimination defenses. On October 4, 2007, the Merit Systems Protection Board (MSPB) concluded that although petitioner failed to prove the affirmative defenses, the ALJ had erroneously ruled in favor of the Air Force. <u>Ryan v. Dept. of the Air Force</u>, 2007 M.S.P.B. 240 (2007). The MSPB concluded that the <u>Cook</u> exception did not apply to petitioner's removal because the Air Force did not demonstrate that petitioner was on LWOP. The MSPB ordered that: (1) The Air Force restore petitioner to employment effective March 21, 2006, no later than 20 days after entry of the MSPB order, and (2) the Air Force provide "the appropriate amount of back pay, interest on back pay, and other benefits * * * no later than 60 calendar days after the date of this decision."[4]

---

[4]The MSPB informed petitioner that he had 30 days to file a civil action against the Air Force on the discrimination claim. <u>Ryan v. Dept. of the Air Force</u>, No. 5:08-CV-927XR (W.D. Tex. 2009), affd. 375 Fed. Appx. 371 (5th Cir. 2010). Petitioner failed to timely file the action appealing the MSPB's Oct. 4, 2007, denial of his discrimination claim. <u>Id.</u>

Subsequently, the Air Force canceled petitioner's removal and directed him to report for work at Tinker on October 15, 2007. However, petitioner did not report for work at Tinker, citing his medical condition. Therefore, the Air Force kept petitioner in AWOL status from March 21, 2006, onward. The Air Force did not provide petitioner with backpay or reinstate his TSP loan during this time.

Because the Air Force failed to take the actions required by the MSPB, petitioner filed an initial petition for enforcement of the MSPB's order on December 4, 2007. On April 3, 2008, the ALJ denied the petition for enforcement. The ALJ found that the Air Force timely canceled petitioner's removal and properly reinstated him when the Air Force sent a letter directing him to report for work at Tinker on October 15, 2007. In addition, the ALJ found that the Air Force properly denied backpay to petitioner for the period from March 21, 2006, through October 15, 2007. An employee is entitled to a backpay award if the employee lost pay as a result of unjustified or unwarranted employer action. The Air Force placed petitioner in nonpay status on January 3, 2006, because he was AWOL, not because he was removed. When the Air Force reinstated petitioner per the MSPB order, the Air Force placed petitioner in AWOL status beginning March 21, 2006. Because petitioner was in AWOL status

and because he was not ready, willing, and able to work, the ALJ concluded that the Air Force properly denied petitioner backpay.

On January 11, 2008, the Air Force sent petitioner a letter proposing removal from employment because of his failure to report for duty at Tinker on October 15, 2007.  The Air Force removed petitioner from Federal employment in February 2008.

After receiving the ALJ's decision, petitioner filed a petition for review with the MSPB on May 1, 2008.  In its opinion of September 19, 2008, the MSPB concluded that petitioner did not present any new evidence and that the ALJ properly concluded that petitioner was not entitled to backpay.  The MSPB decision notified petitioner that he could appeal the decision by filing a complaint with the U.S. Court of Appeals for the Federal Circuit.[5]

On November 17, 2008, petitioner filed a complaint against the Air Force with the U.S. District Court for the Western

_____

[5]In addition, the MSPB noted that petitioner improperly raised his whistleblower retaliation claim in the petition for review of May 1, 2008.  The MSPB advised petitioner to seek corrective action from the Office of Special Counsel before filing a separate appeal with the MSPB.  Petitioner filed an individual right of action under the Whistleblower Protection Act on Oct. 20, 2008.  Ryan v. Dept. of the Air Force, 2009 M.S.P.B. 235 (2009).  On May 15, 2009, the ALJ denied petitioner's claim. Id.  In the appeal, the MSPB determined that petitioner could not challenge whether his removal from service was in retaliation for whistleblowing but that petitioner could challenge whether his placement on LWOP status and the sick leave denials constituted retaliation.  Id.  The MSPB therefore vacated the initial decision and remanded the appeal to the ALJ.  Id.

District of Texas. In the complaint petitioner alleged that the Air Force violated his civil rights by discriminating against him on the basis of his disability.

In response to petitioner's complaint, the Air Force filed a motion to dismiss. On July 31, 2009, the District Court granted the motion. The court concluded that petitioner was not appealing his removal from service but instead was appealing the MSPB order that denied his petition for enforcement of the backpay award and reinstatement. An appeal of the MSPB decision of October 4, 2007, finding that petitioner failed to prove the affirmative defense of disability discrimination, would be time barred. In addition, the court concluded that it did not have jurisdiction over petitioner's complaint because petitioner failed to raise the discrimination issue before the ALJ or the MSPB during his appeal of the petition for enforcement.

On September 25, 2009, petitioner appealed the District Court's ruling to the U.S. Court of Appeals for the Fifth Circuit. On April 20, 2010, the Court of Appeals for the Fifth Circuit affirmed the dismissal for lack of jurisdiction, finding that petitioner only appealed the petition for enforcement of the MSPB order, not the decision denying his disability discrimination claim. Ryan v. Dept. of the Air Force, 375 Fed. Appx. 371 (5th Cir. 2010).

II.  TSP Loan and Deemed Distribution

On May 18, 2006, because of petitioner's removal from service on March 21, 2006, the TSP sent him a letter requesting that he repay his outstanding loan balance of $13,976 before August 4, 2006.  The TSP advised petitioner that, alternatively, he could sign the intent not to repay statement enclosed with the letter.  If petitioner signed the intent not to repay statement or if he failed to repay the balance, the TSP would close the loan on August 21, 2006, and the remaining loan balance would be treated as a deemed taxable distribution for the year.  The TSP warned petitioner that he could be liable for an early withdrawal penalty if he failed to repay the loan balance within the specified period.

Petitioner did not sign the intent not to repay statement but instead continued to make loan payments to the TSP.  The TSP processed petitioner's payments through August 16, 2006, leaving him with an outstanding loan balance of $9,784.  On August 21, 2006, the TSP closed the loan because petitioner failed to repay the outstanding balance.  Petitioner submitted an additional payment in late August, but since the loan had been closed, the TSP refused to accept it.

On August 31, 2006, petitioner sent a letter to the TSP requesting that the TSP restore his loan and accept his future loan payments.  Petitioner alleged that, at the initial hearing,

the ALJ stated that petitioner's removal from the Air Force was "unwarranted," and that the ALJ planned to reinstate petitioner. The TSP did not restore the loan, accept future payments, or take any other action.

Subsequently, the TSP mailed petitioners a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2006. The form indicated that petitioner received a distribution of $9,789[6] from his TSP account. Petitioners included this distribution as income on their timely filed 2006 Federal income tax return.

On February 23, 2009, respondent issued petitioners a notice of deficiency for 2006. In the notice respondent determined that petitioners properly included the TSP loan balance as income. Because the loan closing resulted in a deemed distribution of the balance, respondent determined that petitioners were also liable for the 10-percent additional tax under section 72(t) on early distributions from qualified retirement plans. On May 13, 2009, petitioners timely filed a petition for review of the notice of deficiency.

_____

[6]The record does not reflect the reason for the $5 difference between the loan balance in August 2006 and the amount shown on Form 1099-R.

OPINION

I.   Taxation of the Deemed Distribution

    A.   Burden of Proof

    Ordinarily, the Commissioner's determinations in a notice of deficiency are presumed correct and the taxpayer bears the burden of proving by a preponderance of the evidence that those determinations are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a), however, the burden of proof may shift to the Commissioner with respect to a factual issue relevant to a taxpayer's liability for tax, but only if the taxpayer produces credible evidence to support his position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[7] with regard to all reasonable requests for information.  Petitioner does not contend that section 7491(a)(1) applies, nor does the record establish that the requirements of section 7491(a)(2) have been met.

    Because petitioner is asserting a position that is contrary to the position taken on his 2006 return, he must offer cogent proof that his return position was incorrect.  See Mendes v.

---

[7]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

Commissioner, 121 T.C. 308, 312 (2003). Thus, petitioner not only bears the burden of proving that respondent erroneously determined that petitioners are liable for the 10-percent additional tax of section 72(t) with respect to a deemed distribution to petitioner of the unpaid loan balance, but petitioner also bears the burden of introducing cogent proof that his inclusion of the loan balance in income was incorrect.

B.  Parties' Arguments

Petitioner argues that he erroneously included the deemed distribution in income for 2006, and therefore:  (1) Respondent should refund the income tax petitioner paid on the deemed distribution; and (2) petitioner is not liable for the 10-percent additional tax.  Petitioner argues that he could not have received a deemed distribution in 2006 because he never separated from Government service and the TSP had no right to close his loan.  Petitioner relies on Burton v. Commissioner, 99 T.C. 622 (1992),[8] where we defined separation from service as the point when an employee severs his connection with his employer.  Id. at 626.  Because of ongoing litigation over his removal, as well as the MSPB decision ordering his reinstatement, petitioner argues

_____

[8]In that case, we concluded that an individual's change from employee status to sole proprietor status did not constitute a separation from service for sec. 402(e) purposes.  Burton v. Commissioner, 99 T.C. 622, 629 (1992).  Because the taxpayer merely liquidated his single member professional association and continued to pursue the same profession as a sole proprietor, the taxpayer did not separate from service.  Id.

that he did not sever his connection with the Air Force in 2006 and therefore no distribution occurred.  If no distribution occurred, petitioner contends that he cannot be liable for the 10-percent additional tax on an early distribution from a qualified retirement plan.

Respondent argues that petitioner's reliance on the phrase "separation from service" is misplaced.[9]  Under section 72(p), a loan is not taxable at the time of distribution provided that the recipient complies with the terms of the loan agreement.  Respondent argues that when petitioner stopped making payments on the loan in August 2006, the loan no longer qualified for the section 72(p) exception and the balance became a deemed distribution.  According to respondent, petitioner's attempted payment in August 2006 after the loan was closed is irrelevant because the TSP did not accept this payment.  Finally, respondent argues that petitioner is liable for the 10-percent additional tax under section 72(t) because he received an early distribution from his retirement plan, and no exception applies.

C.   Taxation of TSP Loans and the Section 72(p) Exception

The TSP is a retirement plan for Federal Government employees.  Sec. 7701(j)(1); see also Dollander v. Commissioner, T.C. Memo. 2009-187.  It is a qualified plan under section

---

[9]Petitioner cites sec. 401(k)(2)(B) when discussing separation from service, but sec. 401(k)(2)(B), as in effect for 2006, does not contain the phrase "separation from service".

401(a), and any distribution from the TSP is a distribution from a qualified plan.  Sec. 7701(j)(1).

Generally, if a participant receives a loan from a qualified plan, the amount of the loan is a taxable distribution in the year received.  Sec. 72(p)(1)(A).  However, a loan is not a taxable distribution if the loan meets 3 requirements:  (1) The principal amount of the loan does not exceed the statutorily specified amount; (2) the loan is repayable within 5 years; and (3) the loan requires substantially level amortization over the loan term.  Sec. 72(p)(2).  If the TSP does not notify the participant that the loan distribution was taxable in the year received, this Court may assume that the loan initially qualified for the section 72(p) exception.  Sec. 72(p)(2)(A); see also Royal v. Commissioner, T.C. Memo. 2006-72.

The TSP did not notify petitioner that the loan was a taxable distribution for 2003, the loan origination year. Consequently, we shall assume that petitioner's loan qualified under the section 72(p) exception when the loan was made in 2003.

D.   Effect of Failure To Meet Section 72(p) Requirements

Although a loan originally may satisfy the section 72(p) requirements, "a deemed distribution occurs at the first time that the requirements * * * of this section are not satisfied, in form or in operation."  Sec. 1.72(p)-1, Q&A-4(a), Income Tax Regs.  If "payments are not made in accordance with the terms

applicable to the loan, a deemed distribution occurs as a result of the failure to make such payments." Id.; see also Duncan v. Commissioner, T.C. Memo. 2005-171; Molina v. Commissioner, T.C. Memo. 2004-258. The plan administrator may provide the participant with an opportunity to cure the failure and, if so, a deemed distribution does not occur until the end of the cure period. Sec. 1.72(p)-1, Q&A-10(a), Income Tax Regs.; see also Owusu v. Commissioner, T.C. Memo. 2010-186.

If a TSP participant "separates from Government service," applicable regulations require the participant to "repay the outstanding loan principal and interest in full within the period specified by the notice to the participant from the TSP record keeper explaining the participant's repayment options". 5 C.F.R. sec. 1655.15(a)(2) (2007).[10] The regulations define separation from Government service as "the cessation of employment with the Federal Government * * * for 31 or more full calendar days." 5 C.F.R. sec. 1690.1 (2007).

The regulations thus allow the TSP to accelerate repayment of the loan balance after a participant separates from Government service. 5 C.F.R. sec. 1655.15(a) (2007); see also Duncan v.

---

[10]In discussing the applicability of the phrase "separation from service," the parties erroneously analyzed sec. 401(k)(2)(B). The TSP regulation permitting repayment acceleration uses the phrase "separates from Government service", and this phrase is the relevant one. 5 C.F.R. sec. 1655.15(a)(2) (2007).

Commissioner, supra.  Failure to comply with the accelerated payment schedule constitutes a failure to repay the loan under the terms of the loan agreement.  Royal v. Commissioner, supra; Duncan v. Commissioner, supra; sec. 1.72(p)-1, Q&A-4(a), Income Tax Regs.

If an agency takes an adverse personnel action against an employee that is unjustified or unwarranted, the MSPB may order that the agency provide the employee with "the pay, allowances, and differentials the employee would have received if the unjustified or unwarranted personnel action had not occurred", including correction of any errors in the employee's TSP plan.  5 C.F.R. sec. 550.805(a)(2), (h) (2008).  If an agency reinstates a wrongfully terminated participant, the participant must notify the TSP within 90 days of reinstatement to restore any previously withdrawn amount to the TSP account.  5 C.F.R. sec. 1605.13(d) (2008).[11]

During the 90-day period a participant may also elect "to reinstate a loan which was previously declared to be a taxable distribution."  5 C.F.R. sec. 1605.13(e) (2008).  The regulations do not require the TSP to automatically restore the participant's loan but instead require the participant to take action to

_____

[11]If a participant timely requests restoration of the loan, the participant may either repay the loan balance in full upon restoration or recommence making payments on the loan as scheduled.  Uniformed Services Employment and Reemployment Rights Regulations, 67 Fed. Reg. 35051 (proposed May 17, 2002).

reinstate the loan.  5 C.F.R. sec. 1605.13(d) (2008).  The reinstated participant must notify the TSP within 90 days of reinstatement or accept the consequences of the loan closing. Id.[12]

Petitioner's 2003 TSP loan transaction met the requirements of section 72(p) in 2003, and therefore the loan was not a taxable distribution in 2003.  On March 21, 2006, the Air Force removed petitioner from service and notified the TSP.  The Air Force did not reinstate petitioner within 31 days from March 21, 2006.  As a result, the TSP notified petitioner that the loan provisions required repayment of the outstanding balance by August 21, 2006, to avoid a taxable deemed distribution.  The period from May 18 to August 21, 2006, constituted a cure period,[13] during which time petitioner could have repaid the entire balance, thereby avoiding a taxable deemed distribution.

When petitioner failed to repay the entire balance by August 21, 2006, petitioner ceased to be in compliance with the loan agreement, the loan no longer qualified for the section 72(p)

---

[12]Additionally, the agency need not notify the reinstated participant of the right to restore a TSP loan previously treated as a taxable distribution.  See Crazy Thunder-Collier v. Dept. of the Interior, 2010 M.S.P.B. 202 (2010).

[13]During this time petitioner submitted multiple payments to the TSP which the TSP credited against his outstanding balance. The TSP properly rejected petitioner's attempted payment made after Aug. 21, 2006, because this payment was outside the cure period.

exception, and a deemed distribution occurred.[14]  As of December 31, 2006, the loan balance was a deemed distribution.

If subsequent reinstatement entitled petitioner to loan restoration, the regulations required petitioner to notify the TSP within 90 days of his reinstatement.  Petitioner contends that at the initial hearing, the ALJ made a statement that petitioner would be reinstated.  Relying on the ALJ's remark, petitioner contacted the TSP via letter dated August 31, 2006, and requested that the TSP restore his loan.  However, the ALJ's statement was not an official reinstatement, and the ALJ's decision in fact upheld the Air Force's decision to remove petitioner.  Thus, petitioner did not make a timely request for loan restoration in his August 31, 2006, letter.

When, pursuant to the MSPB order, the Air Force reinstated petitioner on October 15, 2007, he had 90 days to notify the TSP of his reinstatement and request that his loan be restored.  Petitioner has submitted no credible evidence that he contacted the TSP at any time after the October 15, 2007, MSPB decision and thus petitioner has not produced credible evidence that he notified the TSP of the reinstatement within 90 days.  Therefore,

---

[14]Respondent argues that since the TSP did not accept petitioner's late August payment, petitioner never made this payment.  We base our holding on the fact that petitioner failed to pay the remaining balance before the end of the cure period or notify the TSP of his reinstatement.

respondent properly determined that the loan balance of $9,784 was a taxable deemed distribution, and we so hold.

II. Section 72(t) Additional Tax

Section 72(t)(1) imposes a 10-percent additional tax when a qualified retirement plan participant receives an early distribution that fails to satisfy one of the statutory exceptions.  Petitioner's deemed distribution of $9,784 is an early distribution from a qualified retirement plan.  Accordingly, the 10-percent additional tax applies to the $9,784 unless petitioner qualifies for an exception.  See sec. 72(t)(1); see also Stipe v. Commissioner, T.C. Memo. 2011-92; Dollander v. Commissioner, T.C. Memo. 2009-187.

Petitioner has not alleged that any exception applies, nor has he introduced any evidence that could allow us to conclude that an exception applies.  Therefore, petitioner is liable for the 10-percent additional tax on his early deemed distribution of $9,784.

We have considered the remaining arguments of both parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.