T.C. Memo. 2017-139

UNITED STATES TAX COURT

LOUELIA SALOMON FRIAS AND MERVYNGIL SALOMON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 621-15.                      Filed July 11, 2017.

Elizabeth Ann Maresca, Ralph Izzo (student), and Scott Weiss (student), for

petitioners.

Steven R. Gallo and Rose E. Gole, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Chief Judge:  In a notice of deficiency dated October 6, 2014,

respondent determined an income tax deficiency of $15,941 and a penalty under

[*2] section 6662(d)[1] of $3,188 for 2012 (year at issue).  Petitioners, while residing in New York, timely filed a petition for redetermination.  The issues for decision are whether petitioners:  (1) received a taxable deemed distribution resulting from a reclassification of a loan from Mrs. Frias' section 401(k) plan account; (2) are liable for an additional tax under section 72(t); and (3) are liable for an accuracy-related penalty under section 6662.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the supplemental stipulation of facts are incorporated herein by this reference.

In 2012 Mrs. Frias was employed as the assistant administrator and compliance officer at Glen Island Center for Nursing & Rehabilitation (Glen Island), in New Rochelle, New York.  At Glen Island Mrs. Frias was responsible for assisting the nursing home administrator in the day-to-day operations of the 182-bed facility and for the facility's compliance with Federal, State, and local standards for long-term care facilities.  In July 2012 Mrs. Frias requested and was

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All monetary amounts have been rounded to the nearest dollar unless otherwise indicated.

[*3] granted a leave of absence from work at Glen Island because petitioners were expecting their third child. Mrs. Frias used her accrued sick, personal, and vacation leave, which covered approximately five weeks of her leave. The remainder of the leave was unpaid. Mrs. Frias began her leave on July 30, 2012, and returned to work on October 12, 2012.

During 2012 Glen Island maintained a section 401(k) profit-sharing plan (plan) that Mutual of America Life Insurance Co. (Mutual of America) administered. The plan allowed participants to borrow from their plan accounts. Mrs. Frias participated in the plan, and on July 27, 2012, Mrs. Frias entered into a loan agreement with Mutual of America for a loan of $40,000 from her plan account.[2] On the same day, Mrs. Frias entered into a loan repayment payroll deduction agreement, which was incorporated into the loan agreement and was signed by both Mrs. Frias and a representative from Glen Island.[3] The payroll deduction agreement required Glen Island to deduct from Mrs. Frias' after-tax salary in each payroll period the amounts necessary to make the loan repayments

---

[2]As this was not the first loan that Mrs. Frias had taken out of her plan account, she had prior experience dealing with plan loans.

[3]The employee name on the payroll deduction agreement was Louelia F. Pedrozo. The parties have stipulated that Mrs. Frias has used the surnames Pedrozo, Salomon, and Frias interchangeably on documents and communications regarding the 2012 loan.

[*4] and to remit the payments to Mutual of America. The anticipated biweekly payment was $341.79.

The loan agreement required biweekly payroll deductions to start on the first billing statement beginning after August 10, 2012. In the event that a payment was missed, the loan agreement allowed Mrs. Frias to pay the delinquent amounts up to the last day of the calendar month following the calendar month that the delinquent payment was due (cure period). If Mrs. Frias became delinquent and did not pay the delinquent amounts within the cure period, then under the loan agreement the entire loan amount would be in default and considered a distribution and Mutual of America would be required to report the outstanding amount of the loan as a distribution to her.

During Mrs. Frias' leave of absence she received paychecks from Glen Island on the following dates in the following amounts: August 10, 2012, $2,181; August 24, 2012, $2,181; September 7, 2012, $2,181; and October 19, 2012, $2,328. Mrs. Frias received earnings statements with her paychecks that included information about her pay, such as what deductions were taken out of her paycheck. Mrs. Frias' first loan payment was due August 24, 2012. However, Glen Island failed to deduct and to remit the loan payments from the amounts paid

[*5] to Mrs. Frias.[4]  Mrs. Frias did not know that Glen Island had failed to withhold loan payments from her paycheck until she was told by a representative from Glen Island upon her return from her leave.  Further, when Mrs. Frias learned of Glen Island's failure, she immediately made a $1,000 payment on November 20, 2012.  Mrs. Frias then instructed Glen Island to withhold and remit loan payments in the increased amount of $500 each[5] through July 15, 2013.  After July 15, 2013, Mrs. Frias continued to make payments of the original loan payment amounts until the loan had been repaid in full on July 9, 2014.

During the entire time that Mrs. Frias was making payments on the loan, Glen Island withheld and remitted the loan repayments and Mutual of America kept the loan on its books and continued billing Mrs. Frias' account.  On July 16, 2014, Mutual of America sent letters to Mrs. Frias and Glen Island confirming that the loan was repaid in full.

Mutual of America issued Mrs. Frias a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance

---

[4]There is no evidence in the record to suggest that Mrs. Frias directed Glen Island not to deduct the loan payments from the compensation she was paid during her leave.

[5]Glen Island represented to Mrs. Frias that the $500 amount was the maximum amount that could be withheld.

**[\*6]** Contracts, etc., for 2012 showing a taxable distribution of $40,065. The Form 1099-R was available online. Although Mrs. Frias had access to the website, she did not access or review the Form 1099-R, but the record does not disclose whether she had notice that the Form 1099-R had been issued. Mrs. Frias did not report a distribution with respect to the 2012 loan on petitioners' 2012 Federal tax return.

On October 6, 2014, respondent issued petitioners a notice of deficiency for the year at issue. In the notice of deficiency respondent determined that Mrs. Frias had received a taxable distribution from her plan account, that petitioners were liable for additional tax under section 72(t) with respect to that distribution, and that petitioners were liable for the accuracy-related penalty under section 6662. Petitioners timely petitioned the Court for redetermination.

OPINION

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). If, however, a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability for any tax imposed by subtitle A or B of the Code and satisfies

**[*7]** the requirements of section 7491(a)(2),[6] the burden of proof on any such factual issue shifts to the Commissioner.  Sec. 7491(a)(1).  Petitioners do not contend that section 7491(a) applies, and they have not introduced evidence to prove they meet the requirements of section 7491(a)(2).  The burden of proof remains on petitioners.

I.      Deemed Distribution

Section 72(p)(1)(A) provides that any amount taken as a loan from a qualified employer plan will generally be treated as a distribution to the participant.  Under section 72(p)(2), however, a loan will not be treated as a distribution if the loan:  (1) is manifested in a legally enforceable agreement; (2) does not exceed the lesser of the amounts set forth in section 72(p)(2)(A)(i) or (ii); (3) by its terms is to be repaid within five years; and (4) has substantially level amortization over the term of the loan with payments made at least quarterly (substantially level amortization requirement).  Sec. 1.72(p)-1, Q&A-3, Income Tax Regs.

---

[6]Sec. 7491(a)(2) requires a taxpayer to demonstrate that he or she (1) complied with the requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews.  See Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

**[\*8]**    Although a loan originally may satisfy the section 72(p) requirements, "a deemed distribution occurs at the first time that the requirements * * * of this section are not satisfied, in form or in operation." Sec. 1.72(p)-1, Q&A-4(a), Income Tax Regs.  If "payments are not made in accordance with the terms applicable to the loan, a deemed distribution occurs as a result of the failure to make such payments." Id.; see Duncan v. Commissioner, T.C. Memo. 2005-171; Molina v. Commissioner, T.C. Memo. 2004-258.  The plan administrator may provide the participant with an opportunity to cure the failure, and a deemed distribution does not occur unless the participant fails to pay the delinquent payment within the cure period.  Sec. 1.72(p)-1, Q&A-10(a), Income Tax Regs.; see Owusu v. Commissioner, T.C. Memo. 2010-186.

The parties agree that Mrs. Frias' loan was not a distribution at the time the loan was made.  Respondent contends that the amount of Mrs. Frias' loan became a deemed distribution for 2012 when she failed to make her first loan payment which was due on August 24, 2012, and did not correct the failure within the cure period, thereby causing the loan to violate the substantially level amortization requirement of section 72(p)(2)(C).  Petitioners contend that Mrs. Frias was on a leave of absence without pay starting July 30, 2012, and that the substantially level amortization requirement did not apply while she was on leave.  We therefore

**[*9]** must decide under section 1.72(p)-1, Q&A-9(a), Income Tax Regs., whether

Mrs. Frias violated the terms of the loan agreement and whether the loan failed to

satisfy the substantially level amortization requirement.

A.     Substantially Level Amortization

The substantially level amortization requirement under section 72(p)(2)(C)

requires that payment of principal and interest be made in substantially level

amounts over the term of a loan.  See Molina v. Commissioner, T.C. Memo. 2004-

258; Plotkin v. Commissioner, T.C. Memo. 2001-71; Estate of Gray v.

Commissioner, T.C. Memo. 1995-421.  Section 1.72(p)-1, Q&A-10(a), Income

Tax Regs., provides that ordinarily the failure to make any installment payment

when due[7] violates the substantially level amortization requirement.  However, the

substantially level amortization requirement is not violated so long as a payment,

even if delinquent, is made within the designated cure period.  Sec. 1.72(p)-1,

Q&A-10(a), Income Tax Regs.; see Ryan v. Commissioner, T.C. Memo. 2011-

139, slip op. at 15.

Mrs. Frias' first loan payment was due on August 24, 2012, but was not

made by the due date.  Under the terms of the loan agreement the cure period for

---

[7]Payments must be made at least quarterly to satisfy the substantially level amortization requirement.  Sec. 72(p)(2)(C).

**[*10]** this payment expired on September 30, 2012. Mrs. Frias, who returned to work on October 12, 2012, did not make her first payment until November 20, 2012. Because Mrs. Frias failed to make her initial loan payment by the due date and failed to make the delinquent payment before the cure period expired, she defaulted under the loan agreement. As a result, the outstanding balance of the loan as well as any accrued interest became a deemed distribution in 2012 that was taxable to petitioners. See sec. 1.72(p)-1, Q&A-10(b), Income Tax Regs.

B.     Exceptions to the Deemed Distribution Rule

Petitioners contend that Mrs. Frias qualified for an exception to the substantially level amortization requirement because she was considered to be on leave without pay. Respondent contends that Mrs. Frias received pay for approximately five weeks of her leave of absence and therefore she did not meet the leave without pay exception. Respondent also contends that applicable regulations do not relieve Mrs. Frias of the contractual obligation to make payments even during a leave of absence.

Under section 1.72(p)-1, Q&A-9(a), Income Tax Regs., a participant is exempt from the substantially level amortization requirement when he or she is on a bona fide leave of absence for no longer than a year either without pay or at a rate of pay less than the required installment payments. Glen Island paid Mrs.

**[*11]** Frias compensation for her accrued sick, personal, and vacation time during an approximately five-week period of her approved leave from work. During that five-week period Mrs. Frias' paychecks from Glen Island were for amounts greater than the required installment payments. We find, therefore, that Mrs. Frias continued to receive compensation payments during the first five weeks of her leave and was required to make installment payments under the loan agreement in August and September.

Petitioners contend that the paychecks Mrs. Frias received during her leave of absence are not considered pay. Petitioners rely on Maletta v. Bowen, No. 86 CV 2310, 1989 WL 15821 (E.D.N.Y. Feb. 16, 1989), an unpublished Federal District Court memorandum and order that held that vacation pay (but not sick or personal leave pay) is considered wages[8] only when earned, for the purpose of calculating Social Security benefits for postretirement months where the accrued vacation pay was actually paid. Petitioners have failed to explain how the term "wages" in the specific context of calculating Social Security benefits is congruent to the term "pay" under the applicable section 72(p) regulations. In short, we do

---

[8]"Wages" in this context is a term of art under the Social Security Act. See 42 U.S.C. sec. 409(a) (Supp. IV 2014).

**[\*12]** not find this case persuasive in deciding whether Mrs. Frias was without pay for the purposes of section 72(p).

Petitioners also contend on brief that Mrs. Frias' use of accrued sick, personal, and vacation time was not "pay" for purposes of section 1.72(p)-1, Q&A-9(a), Income Tax Regs., because the Family and Medical Leave Act of 1993 (FMLA) allows an employee who is on unpaid leave to use accrued paid vacation, sick, or personal days for all or part of the FMLA leave. 29 C.F.R. sec. 825.207(a) (2012). The right of an employee during FMLA leave to receive payments for leave earned by the employee does not excuse Mrs. Frias' failure to make loan payments from compensation she received during the first five weeks of her leave. Even if we were to accept petitioners' argument about the FMLA, which we do not,[9] the record is devoid of any evidence that Mrs. Frias was actually on or qualified for FMLA leave. Petitioners have failed to convince us that the FMLA excused petitioners from the substantially level amortization requirement of

---

[9]The regulations under the FMLA explain: "The term substitute means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid FMLA leave. Accordingly, the employee receives pay pursuant to the employer's applicable paid leave policy during the period of otherwise unpaid FMLA leave." 29 C.F.R. sec. 825.207(a) (2012). These regulations distinguish between the paid leave provided by the employer and the unpaid FMLA leave and acknowledge that the employee receives pay when the employee is paid for accrued leave.

- 13 -

[*13] section 72(p)(2)(C).  See Rule 143(c) (providing in part that statements made in briefs do not constitute evidence); Reiff v. Commissioner, 77 T.C. 1169, 1175 (1981).

Petitioners also contend that if section 1.72(p)-1, Income Tax Regs., does not apply, there was no distribution because:  (1) all parties to the loan acted as though they agreed to suspend payments; (2) the substance of the repayments should be honored over the form that was required; or (3) Mrs. Frias corrected the default in accordance with Rev. Proc. 2008-50, 2008-2 C.B. (Vol. 1) 464, 481.[10]

Petitioners' arguments are without merit.  If, as petitioners contend, all parties agreed to suspend payments on Mrs. Frias' loan, such an agreement should have been evidenced by a writing or a qualifying electronic medium.  See sec. 1.72(p)-1, Q&A-3(b), Income Tax Regs.  Petitioners did not prove that the loan agreement was ever amended, as required by section 1.72(p)-1, Q&A-3(b), Income Tax Regs.  Moreover, petitioners' argument that the substance of what happened rather than the form of what happened should control ignores the express requirements of the loan agreement and applicable regulations.  See sec. 1.72(p)-1, Income Tax Regs.

---

[10]Rev. Proc. 2008-50, 2008-2 C.B. (Vol. 1) 464, has been superseded; however, Rev. Proc. 2008-50, supra, applied at the time of the loan.

**[\*14]**  We also reject petitioners' argument that any default was corrected under

Rev. Proc. 2008-50, supra.  Petitioners rely on Rev. Proc. 2008-50, sec. 6.07(3),

2008-2 C.B. (Vol. 1) at 481, which allows a plan sponsor, not a plan participant

such as Mrs. Frias, to correct loans that do not comply with section 72(p)(2).  The

plan sponsor must then request relief from the IRS.  The record is devoid of any

evidence that Glen Island requested and received approval from the IRS as

required by Rev. Proc. 2008-50, supra.  We therefore must conclude that Rev.

Proc. 2008-50, supra, does not relieve petitioners from the substantially level

amortization requirement of section 72(p)(2)(C).  Accordingly, respondent's

determination is sustained.[11]

## II.    Section 72(t) Additional Tax

Section 72(t)(1) imposes a 10% additional tax on early distributions from

qualified retirement plans.  Section 72(t)(2), however, sets forth specific

exceptions to the general rule of section 72(t)(1) that the 10% additional tax

applies.  Petitioners did not argue on brief or at trial that any of the statutory

---

[11]Loans are generally considered distributions unless taxpayers strictly comply with the Code and applicable regulations.  Sec. 72(p)(1).  However, because Mrs. Frias paid off a loan that no longer was a loan but rather a deemed distribution, the regulations provide that Mrs. Frias has tax basis in any cash repayments to her plan account.  Sec. 1.72(p)-1, Q&A-21, Income Tax Regs. Respondent so concedes.

[*15] exceptions applies to them.  Accordingly, we sustain respondent's determination as to the section 72(t) additional tax.

III.    Section 6662 Penalty

Section 6662(a) and (b)(2) authorizes the imposition of a 20% penalty on the portion of an underpayment that is attributable to a substantial understatement of income tax.  A substantial understatement of income tax exists if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  The term "understatement" means the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed that is shown on the return, reduced by any rebate.  Sec. 6662(d)(2)(A).

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447.  Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position.  See Higbee v. Commissioner, 116 T.C. at 446-447.

**[\*16]**  We assume that respondent satisfied his initial burden of production under section 7491(c) and focus on the only issue that petitioners raised with respect to the section 6662 penalty--whether they had reasonable cause and acted in good faith within the meaning of section 6664(c)(1).

Petitioners argue they had reasonable cause because Mrs. Frias did not receive a physical copy of the Form 1099-R from Mutual of America and had only electronic access to it.  Petitioners also argue that they had reasonable cause because Mrs. Frias made loan payments when she returned from her leave of absence which were accepted by Glen Island and Mutual of America.

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that he or she acted in good faith.  Sec. 6664(c)(1).  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.  The most important factor in

**[\*17]** determining reasonable cause and good faith is the extent of the taxpayer's effort to assess his or her proper tax liability.  Id.

We have held that the nonreceipt of an information return such as a Form 1099-R or Form W-2, Wage and Tax Statement, does not excuse a taxpayer from his or her duty to report the income shown on the return.  Ashmore v. Commissioner, T.C. Memo. 2016-36 (nonreceipt of a Form W-2), Du Poux v. Commissioner, T.C. Memo. 1994-448 (nonreceipt of Forms W-2 and 1099-MISC).  Specifically, we have held that the nonreceipt of an information return does not constitute reasonable cause for purposes of a section 6662(a) accuracy-related penalty.  See Deas v. Commissioner, T.C. Memo. 2000-204 (holding that nonreceipt of Schedule K-1 did not constitute reasonable cause for a taxpayer's failure to report partnership income).  The fact that Mrs. Frias did not receive a  Form 1099-R is not enough to constitute reasonable cause, particularly when an electronic Form 1099-R was available to her but she failed to access it.

The reasonable cause analysis in this case is more complicated, however, and is not controlled by the existence or availability of the Form 1099-R.  Unlike the cases cited above where the taxpayers knew or should have known they had taxable income (by virtue of the fact of either having a wage-paying job or being a partner in a partnership), the record supports a finding that Mrs. Frias did not have

**[*18]** reason to know that her loan had been treated as a deemed distribution for 2012. Glen Island had an obligation to withhold the loan repayment amounts from Mrs. Frias' paychecks and to transmit the amounts to Mutual of America. Glen Island failed to meet this obligation. Mrs. Frias was on maternity leave, and part of her leave period was without pay. She reasonably relied on Glen Island and Mutual of America to withhold required loan payments and properly administer her loan account. Under the circumstances it is understandable that Mrs. Frias assumed her loan repayments were being made to the extent the loan agreement required and her failure to check her earning statements is not fatal to this analysis.

Upon Mrs. Frias' return to work, a representative of Glen Island informed her that Glen Island had failed to withhold loan payments from her paychecks. Mrs. Frias immediately took steps to correct the problem, and with advice from Glen Island she authorized a one-time payment of $1,000 followed by several increased payments of $500 each. Further, Mutual of America kept the loan on the books, continued to bill Mrs. Frias' account, and sent a letter to her in 2014 confirming that the loan was repaid in full. Glen Island continued to withhold and remit payments throughout part of 2012, all of 2013, and part of 2014.

Although Mrs. Frias was aware that a loan from a section 401(k) plan account could have tax consequences, she had no reason to know that this

[*19] particular loan had tax consequences considering the advice she had received from her employer and the obligation of her employer to withhold loan payments under the loan agreement. Nothing in the conduct of her employer and the plan administrator during 2012 warned Mrs. Frias that the loan payment problem had not been properly cured. Although this is a close case, under all of the facts and circumstances we conclude that petitioners had reasonable cause and acted in good faith. Petitioners honestly misunderstood the status of Mrs. Frias' loan at the end of 2012, reasonably relied on Glen Island and Mutual of America regarding the repayment of her loan, and had no reason to question the representations of Glen Island and Mutual of America. See sec. 1.6664-4(b)(1), Income Tax Regs.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662.